JULIA CLAIRE STRAKOSCH vs. THE CONNECTICUT TRUST AND SAFE DEPOSIT COMPANY, EXECUTOR.

First Judicial District, Hartford, March Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

Where the parties to a contract do not attempt or intend to integrate their entire oral agreement into one written agreement, the parol evidence rule does not apply, and the entire contract, oral and written, is provable.

The plaintiff and the defendant's testator entered into an oral agreement whereby the plaintiff agreed to give herself in adoption to the defendant's testator, and he agreed to make a provision for her, in addition to the legacy of $20,000 already given her in his will, of such a value that from both sources she would, after his death, receive an income of $2,500 or $3,000 a year. Pursuant thereto the parties made a written agreement, in accordance with the statutes of adoption, containing only such matters as technically and legally arose out of the adoption, and this agreement was approved by the Court of Probate according to law. The method of carrying out the provision for the plaintiff was not determined at the time of making the agreement, but it was understood that the defendant's testator was to have the option of buying an annuity, setting aside securities for her, or setting up a trust fund in her favor. Thereafter he discussed with various persons these methods, estimating that $35,000 was the proper sum to carry out his agreement, but he died suddenly without having made provision for

the plaintiff other than the bequest of $20,000 in his will. *Held* that the parol evidence rule did not apply, and that the contract was not too indefinite for enforcement, since the obligation assumed by the defendant's testator was fixed, and only the method of carrying it out was uncertain.

In her claim presented to the defendant as executor, the plaintiff had stated the agreement as one to give her by will or otherwise $35,000, in addition to that given her by the will of the deceased; while in her complaint in this action she stated it as one to leave her by will or otherwise a sum of money which, if invested, would produce an annual income of $2,500, estimated by him to be the sum of $35,000, in addition to the sum already given in his will. *Held* that there was no material variance between the claim presented and the complaint, or between the complaint and the facts found.

The court, in awarding damages to the plaintiff, first determined that the bequest made in the will would yield an annual income of $1,000, and then, by the use of annuity tables, determined the cost of an annuity which would yield the plaintiff $1,500 for her life, and awarded her a sum equal to such cost, with·interest from the date of the disallowance of her claim. *Held* that the method followed by the court did exact and complete justice in giving the plaintiff the power to obtain the exact equivalent of what the contract had offered and of which by the breach she had been deprived.

The defendant claimed that the cost of such an annuity would be the present value of $1,500 per year for the plaintiff's expectancy of life. *Held* that such claim was not well founded, since, according to the practice of actuaries, such cost was computed by a complicated process based not upon the expectancy of life, but upon the present value of each yearly payment called for, discounting the probability of the annuitant's completing that year, to the extremity of human life.

While the court may take judicial notice of the calculations or computations made in annuity tables, it is also entitled to use statements of computations made from such tables admitted in evidence without objection.

Argued March 4th—decided July 22d, 1921.

ACTION to recover damages for the alleged breach of an oral contract relating to the adoption of the plaintiff by the defendant's testator, pursuant to which an adoption was afterward executed in legal form, brought to the Superior Court in Litchfield County where a demurrer to the complaint was overruled (*Greene, J.*) and the cause was afterward tried to the court, *Maltbie, J.;*

facts found and judgment rendered for the plaintiff for $39,640, and appeal by the defendant. *No error.*

Carl Strakosch, an Austrian by birth, married Clara Louise Kellogg in 1887, she then being forty-seven years old and he twenty-seven. No children were born of their union. About 1909 Mr. and Mrs. Strakosch met the plaintiff, who was then eighteen years old, and thereafter the plaintiff and the Strakoschs met with increasing frequency, and the Strakoschs formed a strong attachment for the plaintiff, and at their invitation the plaintiff visited them at their home in Connecticut, and in 1914 the plaintiff took an extensive trip in Europe with them as their guest, and from that time on she was mostly with them, either at their home in Connecticut or at their New York home. Carl Strakosch, as early as January, 1913, told the plaintiff of the loneliness of himself and his wife and their need of a child, and developed a very strong paternal feeling toward the plaintiff. Mrs. Strakosch died on May 18th, 1916. Immediately thereafter, and in May, Carl Strakosch orally offered the plaintiff that if she would consent to give herself in adoption to him, and become his adopted daughter, and assume his surname of Strakosch, he would make a provision for her, in addition to the legacy of $20,000 already given her in his will, of such a value that from both sources she would, after his death, receive an income of $2,500 or $3,000 a year. This offer was discussed by Strakosch with the plaintiff from time to time after May, 1916, was continued open for her acceptance, and was subsequently and prior to June 21st, 1916, accepted by the plaintiff, and said agreement was orally made by and between Strakosch and the plaintiff. Pursuant to and in part performance of said agreement, the plaintiff and Carl Strakosch subsequently, on June 21st, 1916, made an adoption agreement, pursuant to the provision of the

statute laws of Connecticut, which was duly approved by the Court of Probate for the district where said Strakosch then resided, and the plaintiff thereafter duly performed all the undertakings on her part under the agreement. This agreement was strictly within the limits of the statute, involving no other matters than those technically and legally arising out of the adoption. The operative parts were as follows:—

"Witnesseth:

"First: That the said Carl Strakosch hereby accepts, receives and adopts the said Julia Claire Harris as his own daughter and gives to her the name of Julia Claire Strakosch, by which she shall hereafter be known and called, and assumes on his part, to the fullest extent, in reference to said Julia Claire Harris, all the rights and obligations which can be acquired by, or imposed upon any person, by the adoption of another person of full age under the provisions of the Statute Laws of the State of Connecticut, hereby establishing between himself and the said Julia Claire Harris the relation with all its rights and duties, of a legitimate parent and child, to the fullest extent possible under the laws of this State.

"Second: That the said Julia Claire Harris does hereby give herself in adoption to the said Carl Strakosch, as his legal child, and agrees to accept the name of Julia Claire Strakosch, by which she shall be hereafter named, and called, and to assume on her own part, to the fullest extent, all the rights, duties and obligations which can be acquired by, or imposed upon any person of full age, by reason of such adoption under the provisions of the Statute Laws of the State of Connecticut, hereby establishing between herself and the said Carl Strakosch, the relation, with all its rights, and duties of a legitimate parent and child, to the fullest extent possible, under the laws of this State."

This adoption agreement, dated June 21st, 1916, was

approved by the Court of Probate according to law on the 28th day of June, 1916.

This agreement of adoption was collateral to and independent of the oral agreement, and there was no intent on the part of the parties to make said adoption agreement include any undertakings referred to in the contract above mentioned, except those legally involved in and required by the statute concerning adoption. The provision made for the plaintiff with reference to her annual income was to be carried out by said Strakosch, but, whether by buying an annuity, setting aside securities for her, or setting up a trust fund in her favor, was not determined upon by said Strakosch at the time of entering into said agreement, but it was understood and intended between him and the plaintiff that said agreement gave him the option of adopting either of said modes of performance, and that the undertaking was more than an offer to make a further legacy to the plaintiff. At the time of making the agreement Strakosch was fifty-six years old, and the plaintiff was twenty-five years old, and in no way related to said Strakosch other than through and by said adoption agreement. On various occasions after the original proposal and up to the time of his death, Strakosch discussed with his intimate friends and the plaintiff various methods in which the full performance of his agreement might be accomplished, and the agreement with reference to said adoption and said income was acknowledged and confirmed by Strakosch at divers times during the year 1916 and up to the time of his death. Said Strakosch died suddenly on October 23d, 1916, and while he was actively considering and planning for the carrying out of the part of said agreement relating to the income of the plaintiff. His will contained the bequest of $20,000 referred to in the agreement, but contained no other provision for her, his plan

as to the method of carrying out said agreement not having, at the time of his death, fully matured. The claim of the plaintiff, exhibited to the executor of the deceased, is as follows:—

"Estate of Carl Strakosch, Deceased, late of the Town of New Hartford.

"(The Connecticut Trust & Safe Deposit Company, Executor) Dr.

"To Claire Harris Strakosch of New York.

"To damages, for failure of Carl Strakosch to perform an agreement made by him to give to said Claire Harris Strakosch by will or otherwise, $35,000, of which he should die possessed, in addition to an amount given to her by the will of said deceased, in consideration of her signing and entering into an agreement in adoption, which the said Claire Harris Strakosch signed and entered into on the 21st day of June, 1916, $35,000." This claim was duly rejected by the executor.

The complaint as amended alleges the oral contract to have been as follows: "On or about the 21st day of June, 1916, Carl Strakosch, late of the town of New Hartford, Litchfield County and State of Connecticut, a man of full age and having no wife, entered into a parole agreement with the plaintiff, a girl of full age and younger than himself, and who was not related to said Carl Strakosch either by the whole or half blood, and who was not the wife of said Carl Strakosch, whose name was Julia Claire Harris, to leave to her by will or otherwise a sum of money which, if invested, would produce an annual income of $2,500, estimated by him to be the sum of Thirty-five thousand dollars ($35,000), in addition to the sum of Twenty thousand dollars ($20,000), then provided and given to her in his will, on condition and in consideration that the plaintiff give herself in adoption to him, the said Carl Strakosch, and

become his legal child, and thereafter assume the surname 'Strakosch,' in lieu of the surname 'Harris,' and otherwise to assume on her part all the rights, duties and obligations which can be acquired by or imposed on, a person of full age by reason of such adoption under the laws of the State of Connecticut."

The court rendered judgment for the plaintiff to recover $39,640.94 as damages, which damages were estimated and determined by the court as follows: "In arriving at the amount or measure of damages to which the plaintiff was entitled for breach of the aforesaid agreement, the court determined that the $20,000 legacy bequeathed to the plaintiff in the will of said Carl Strakosch would reasonably produce to the plaintiff an annual income of $1,000, and in estimating and determining the additional amount that would be necessary to produce the remaining portion of the income to be provided to the plaintiff under the aforesaid agreement, the court considered, in determining the cost to the plaintiff of an annuity which would yield her $1,500 for her life, the figures appearing in the letter of Joseph B. Gilder to Carl Strakosch, 'Exhibit D,' and which were taken from the handbook of the Equitable Life Assurance Society, and determines and finds that every thousand dollars then paid would yield plaintiff an annuity of $44.84, requiring to produce an annuity of $1,500 per year the amount of $33,452.27. To this amount the court added interest from the date when the claim was disallowed, all as appears in the memorandum of decision of the trial court dated June 12th, 1920, made a part hereof, and which may be printed in connection herewith."

Other necessary facts, as well as the substance of the reasons of appeal, will appear in the opinion.

*Joseph F. Berry,* for the appellant (defendant).

*Harry W. Reynolds* and *William H. Blodgett,* for the appellee (plaintiff).

GAGER, J. This action is based upon a contract to provide the plaintiff with a specific annual income for life. It is apparent that the whole bargain consisted of two parts: the adoption as the condition and consideration on the part of the plaintiff, and the creation of an annual income by Mr. Strakosch in return for the performance of the condition, and to make her independent, whatever he might thereafter do with his property. On June 21st, 1916, the plaintiff performed the condition and thereupon became entitled to the performance by Strakosch of his undertaking to make provision for her income. There was no connection between adoption and its legal results, on the one hand, and the creation of the income, on the other, except that created by the oral agreement of the parties.

The parties being residents of Connecticut and both being of full age, the adoption agreement was governed by the provisions of our statute, which requires a written agreement of adoption approved by the Court of Probate. General Statutes, § 4882. The only content of this written agreement required by or mentioned in the statute, is as to the adoption itself as the creation of a new relationship. The statute provides for the legal results of this relationship, and not the agreement of the parties. It simply applies the legal results of the natural relationship of parent and child to the fictional relationship authorized to be created by the statute. There was here no attempt or intention to integrate, to use the recently adopted word, the entire oral agreement into one written agreement. That part required by the statute to be in writing was written, and that only, and a reference to the operative terms of this agreement in the statement of facts will show that there was no

attempt to cover any other or collateral agreement whatever by the writing.

The defendant, both by demurrer and by reason of appeal from the conclusions reached by the trial court, makes the refusal of the court to apply the so-called parol evidence rule to the written adoption agreement, one of the chief grounds of error. From the attitude we have already suggested in the analysis of the contract, it must be apparent that we see no force in this claim.

In the case of *Brosty* v. *Thompson,* 79 Conn. 133, 135, 64 Atl. 1, is a statement of the law by TORRANCE, C. J., which we think fully covers the situation disclosed in this case, and we quote: "The plaintiffs claim that the existence of the written agreement rendered the prior oral agreement between the parties, for the purchase and sale of the personal property, of no avail to the defendant. This claim is based upon the so-called 'parol evidence rule,' that where parties merge all prior negotiations and agreements in a writing, intending to make that the repository of their final understanding, evidence of such prior negotiations and agreements will be rejected as immaterial. The rule itself is firmly established; *Galpin* v. *Atwater,* 29 Conn. 93, 97; *Averill* v. *Sawyer,* 62 Conn. 560, 568, 27 Atl. 73; *Caulfield* v. *Hermann,* 64 Conn. 325, 327, 30 Atl. 52; and the only question is whether it is applicable in this case. We think it is not. Whether the parties intended the writing to embody their entire oral agreement or only a part of it, was a question for the trial court, to be determined from the conduct and language of the parties and the surrounding circumstances; and that court has found that the parties had no such intent, and there is nothing in the record to show that the court, in reaching that conclusion, erred either in law or in logic. 4 Wigm. on Ev. § 2430. Where the parties do not intend to embody their entire oral agreement in the writing, the

rule invoked by the plaintiffs does not apply. *Collins* v. *Tillou*, 26 Conn. 368; *Clarke* v. *Tappin*, 32 Conn. 56; *Hall* v. *Solomon*, 61 Conn. 476, 482, 23 Atl. 876; *Averill* v. *Sawyer*, 62 Conn. 560, 27 Atl. 73; *Chapin* v. *Dobson*, 78 N. Y. 74. That rule does not apply in this case." See also *Horner* v. *Maxwell*, 171 Iowa, 660, 153 N. W. 331 [a very recent (1915) decision peculiarly applicable and in harmony with our rule]; 2 Williston on Contracts, §§ 631–636; 4 Wigmore on Evidence, § 2430.

The trial court has expressly found that the parties had no intent to make the written adoption agreement include the special income agreement, and there is nothing in the language of the writing which can be reasonably construed as referring to income, as a matter of contract between the parties; and the action itself is not based upon the writing, though, as a consequence of the statute, the writing was necessary to create the relationship which is the presupposition of the income contract. The income contract was in no way necessarily involved in the adoption agreement, nor was the adoption agreement necessarily involved in the income agreement, except as the parties made it so by the oral agreement on which the action is based. The opinion in *Brosty* v. *Thompson*, 79 Conn. 133, 135, 64 Atl. 1, covers fully the reasons of appeal founded on the parol evidence rule. There is no error apparent in the record in the rulings of the court, based upon this rule or arising out of it, whether made upon the demurrer, or in the admissions of evidence, or in the conclusions of the court. The result being so clear upon the record and so definitely settled by our own decisions, it is unnecessary to refer to the very numerous cases cited to this point upon the briefs, though they have been fully considered in preparing the opinion.

The appellant next complains that "the offer set forth in paragraph 10 of the first subdivision of the finding was

too indefinite and uncertain to afford a basis of recovery, or to constitute an enforceable contract or one for breach of which damages could be recovered."

The suggestion of the appellant is that the contract is too indefinite for enforcement because it is not explicit as to what the plaintiff was to receive. We think, on the other hand, that it is clear that the intent of both parties was that the plaintiff should have a sure income after Mr. Strakosch's death of $2,500 per year. That it was not formally guaranteed is of no consequence. It was to come from provision made by him in some reasonable way in accordance with the dictates of ordinary financial prudence, in addition to a legacy of $20,000 already provided by him in his will. All that was necessary was that Mr. Strakosch should, acting reasonably and in good faith, make provision for the clearly specified income. A provision so made would meet the requirements of the contract. The possibility that, with changes in financial conditions, a provision adequate when so made might not always produce that exact income, is a contingency that cannot well be escaped, especially when providing for an income for life for a person then about twenty-six years old, having an expectation of life of thirty-eight years. This is not the kind of uncertainty that makes an express contract unenforceable. But, in addition, appellant says: "It is very clear in this case that the promissor here retained an unlimited right to decide later the nature and extent of his performance, and, having such unlimited choice with respect to the nature of the performance, it makes this promise illusory since he may perform it in so many different ways that it cannot be said that he is obliged to perform in any one way. Clearly he was not obliged to grant an annuity, nor should the court compel his estate to do that when he distinctly disclaimed this method of performing."

We do not think that the promise gave Mr. Strakosch the unlimited right to decide later the nature and extent of his performance.   Nature and extent are not the same as method.   It is to be presumed that the method adopted by him will be reasonable for the accomplishment of the explicit purpose undertaken.  His promise is not affected in its definiteness and certainty by the fact that he retains the right to choose the method.   This means no more than it means in the case of any business contract where the contract is only with reference to the result. It is true that the court has found that Mr. Strakosch retained the right to choose his method of performance. That does not affect the essential thing he undertakes to do; that is, provide for an annual income of $2,500. How he does it is quite immaterial to the plaintiff, so long as he does it.   His primary obligation cannot be avoided because he altogether neglects to exercise his option as to method

Contracts to provide for the payment of a sum certain, whether a single sum or payable in instalments, ordinarily leave the obligor free to choose his own method; and that, in effect, is the case here.   Because Mr. Strakosch, though diligently preparing to exercise his option and make the provision to pay the sum called for by the agreement, was, by his unexpected death, prevented from carrying out in person his part of the contract, that is no reason why the plaintiff, who has fully performed, should be deprived of the income contracted for; for Mr. Strakosch had no option as to furnishing a definite income.   Having by death been prevented creates no uncertainty in the contract, but leaves the court to carry out the contract in the manner it deems best, though its method may not be any of the methods the obligor had in mind.   A quotation from *Oles* v. *Wilson,* 57 Colo. 246, 141 Pac. 489, is relevant (p. 267): "Should we assume, as defendants in error

contend, that the obligation contemplated the selection by Macky of specific articles or securities for the plaintiff, we do not think it would render the contract nonenforceable in equity. . . . Furthermore, the requirement or right reserved in that respect, if there be such, is one incidental to the main obligation to bequeath to her the one-third part of his estate, and in carrying out the trust, will be performed by the court or disregarded. The principle applied, is, that when the chief purpose of a contract is manifest and can be enforced, form shall not be allowed to destroy substance, merely because there exists an impossibility to carry out some collateral or subsidiary agreement according to its precise terms; especially when the contract has been performed by the party seeking its enforcement and he is in no sense responsible for the failure concerning the collateral or subsidiary agreement." See also *Rue* v. *Rue*, 21 N. J. L. 369. By the terms of the contract Mr. Strakosch had his lifetime in which to make provision for the income; therefore there was no breach until it was determined by the fact of his death without having made the provision, for the plaintiff was not to begin receiving the income until his death. After all that may be said, the sure, definite thing about the contract is the income of $2,500 per year.

In this connection the appellant discussed the refusal of the court to strike out that portion of the finding relating to the option as to method of performance, which was stated above. The claim is that this statement was not warranted by the evidence, and was a conclusion of law and not of fact. The appellant says: "A careful reading of the evidence fails to show anywhere that the plaintiff accepted the offer of the deceased in any definite sort of a way or that she had any consciousness that he was to perform it in any particular way." It appears from the evidence on this point that definitely and cer-

tainly the proposition made and accepted was for a $2,500 income. The real substance of the agreement is stated in the evidence of the plaintiff in this way: "I never suggested any amount because I knew little of such affairs, but he named to me that he thought an income of $2,500 or $3,000 a year, so that I could live in about the same way as I was then living in case anything happened to him. He said that he wanted to make this provision for me, and if I would consent to be his daughter he would do so." It does not appear that any specific method of provision was agreed upon. The method is no part of the contract. Various methods were discussed. The agreement did not necessarily involve any "consciousness that he was to perform it in any particular way."

We think that as a legal consequence of the contract as stated by the court, Mr. Strakosch had, in the absence of any specific method incorporated in the contract, the same option as to method of performance that was found by the court, and that the finding of the fact adds nothing to the legal effect of the contract, except to negative any idea that any particular method was intended to be a part of the contract. In addition, plaintiff's testimony of their informal talks of different methods without, as between plaintiff and Mr. Strakosch, the adopting of any specific method, is sufficient warrant for the conclusion of the court as to the fact, and we do not see that in ultimate effect it really made any difference whether the finding as to this option of method is regarded as a conclusion of law or of fact.

The appellant presents two reasons of appeal based on the claim of variance: one, of the variance between the amended complaint and the facts found; the other, a variance between the claim presented to the executor and the amended complaint. We first take the variance

between the claim presented and the amended complaint. Both the claim and the amended complaint are set out in full in the statement of facts. It has already appeared that Mr. Strakosch died without performing his contract. Upon his death the plaintiff's right of action came into being, and it was for breach of contract, and the plaintiff's remedy was for damages. Whether or not, as suggested, the plaintiff might have made a claim against the estate for specific performance, it is not necessary to determine, for the plaintiff elected to claim damages for breach of contract, which she certainly had a legal right to do. The claim as presented to the executor was the claim for damages for breach of contract. The claim shows the consideration to have been the adoption, perfected according to the statute; that the agreement breached was to give the plaintiff something in addition to an amount given by a will then in existence, which an examination of the will would show was $20,000; and stated the amount promised to be given as $35,000. The damages in fact claimed were $35,000. The relevant part of the agreement sued on, as stated in the amended complaint, was "to leave her by will or otherwise a sum of money which, if invested, would produce an annual income of $2,500, estimated by him to be the sum of $35,000, in addition to the sum of $20,000, then provided and given to her in his will." It also appears in the finding that Mr. Strakosch, after the adoption had become perfected, had $35,000 in mind as the proper sum, and so stated to friends and the plaintiff and her sister. There is no such variance here as ought to defeat the plaintiff's claim. The claim as presented is based on facts as they existed at the time Mr. Strakosch died, and not at the time of the execution of the contract. The plaintiff, instead of setting out the contract literally and in full and as found to have been made by the court, stated a version of what the con-

tract called for, fair under the circumstances, warranted by the statement of Mr. Strakosch as in his judgment a proper equivalent, and certainly not misleading to the executor. The essential feature was the agreement to leave the plaintiff, by will or otherwise, an amount of money in addition to the legacy. The contract having been broken and her right converted into a right to recover a sum total, whether she so stated it or stated it as the right to recover a yearly income for life, is not material. It may be that the plaintiff, in getting at the amount, did in a sense liquidate the agreement, but she does inform the executor that her claim was based upon the promise to give. The contract was certainly capable of being so liquidated. In fact when the court comes to liquidate, to determine the damage which is reasonable compensation for the breach, it differed only about $1,500 from the amount as stated in the claim as the effect of the contract. The plaintiff, under the agreement, had a money contract. In her claim she stated a money contract, and this is what is alleged in the complaint. While the claim stated with a good deal of detail the consideration out of which her claim arose, the complaint simply stated with more detail, and there is no variance in the ground of action. There is no material variance between the claim presented and the amended complaint.

Next is the claimed variance between the proof and the complaint, which means here the contract as found by the court and the contract alleged in the amended complaint. If the variance between the claim as presented and the amended complaint is not fatal, still less is that between the proof and the complaint. Our law as to variance, applying to both of the appellant's claims, has recently been stated with clearness and precision by PRENTICE, J., in *Maguire* v. *Kiesel*, 86 Conn. 453, 457, 85 Atl. 689. In this opinion, after

citing other cases, and stating that immaterial variances should be disregarded, and that this rule has been enforced consistently, "to the end that claims of variance be discouraged," the following definition of variance has been adopted: "A variance . . . to be available, must be 'a disagreement between the allegations and the proof in some matter essential . . . to the charge or claim.'"

In the present case there is no disagreement between the allegations and the proof in any matter essential to the charge or claim. Both count upon an outright gift of $20,000 by will, the annual income of which, as found by the court, should be reckoned at five per cent, or $1,000. This leaves $1,500 per year to be provided for under the contract. The complaint says "a sum of money which, if invested, would produce an annual income of $2,500 [including the $1,000 income from the $20,000 legacy]." The contract proved is "provision for her . . . of such a nature that from both sources she would after his death receive an income of $2,500 to $3,000 a year." The forms of statement differ slightly, but the clear result of both is an income of $2,500 per year from the combined sources. While the income only of the $20,000 is to be counted, the gift of the principal being absolute, the balance of $1,500 per year to be paid to the plaintiff personally, is necessarily only for her life. Considering the nature of the contract and that it was oral, the correspondence between the contract alleged and the contract found is unusually close in its form. The essential fact is the agreement, in whatever way might be most expedient, to provide the plaintiff with a life income of $1,500 per year to supplement the $1,000 per year which the court found the gift of $20,000 would produce. The court committed no error in overruling the claims of variance.

The statement of facts sets forth the method used by

the court in arriving at the damages assessed. A letter, Exhibit D, was used, and the sixth assignment of error is based on the claimed misuse of this exhibit. In the appellant's brief, for the purposes of discussion, this claim of error is recited as follows: "Whether the court was warranted in using the marginal figures in Exhibit D and finding judgment thereon: (a) whether the court should take judicial notice of such figures upon the facts as found; (b) whether the proper measure of damages upon the facts as found was applied by the court."

The court makes a special finding with respect to this exhibit, which was a letter from J. B. Gilder to Mr. Strakosch, written apparently in answer to a request of Mr. Strakosch for information. The material part of the finding upon this point states these facts: the letter is dated July 11th, 1916; a marginal note upon the side in Gilder's handwriting supplemented the main and typewritten part. Strakosch had given Gilder the information as to ages of himself and the plaintiff, and had indicated a thought of getting a joint and survivor annuity. The rates quoted were the rates contained in the book explanatory of the rates and terms and various forms of insurance issued by the Equitable Life Assurance Society of New York, of which both Gilder and Strakosch had copies. One of the side margins in this letter furnished the figures from which the court calculated and determined the amount of damage to be paid the plaintiff. The specific entry was: "Your Equitable book will show you that $25,000 would buy an annuity for a female aged 26 as follows: paid annually $44.84 per $1,000. . . . If your book is like mine, these results may be obtained from pages 486 and 485 respectively." This letter, explained on the witness stand by Mr. Gilder, was introduced in evidence by the plaintiff; defendant's counsel making no objection to the admission of the writing.

The court took these figures from this letter as the statement from the handbook of the "Equitable Life Assurance Society, and determined and finds that every one thousand dollars then paid would yield the plaintiff an annuity of $44.84, requiring to produce an annuity of $1,500 per year, . . . $33,452.27." This is the statement in the finding. The court, therefore, adopts, as the measure of damages, the amount it would cost in the Equitable to procure an annuity for life of $1,500 per year, all necessary data having been given in evidence and found, to wit: the $1,500 for each year, the time for the life of the plaintiff, and the age of the plaintiff, twenty-six, being given, the question became one of ascertaining from these data the total amount required. The appellant first says: "It is a well-settled rule that there can be no recovery of substantial damages in the absence of evidence as to the extent of the pecuniary loss, and, therefore, where the action is for damages which are uncertain or have not been admitted by the defendant, the burden is on the plaintiff to establish the amount thereof."

The fallacy of this statement lies in the assumption that the action is for damages which are uncertain. Because the damage results from an injury which will be permanent, that is, for life, it never was thought that this damage, because for life, was too uncertain to entitle the plaintiff to recover without additional proof to the court calculating and fixing the amount of this damage. In such cases counsel seldom attempt to advise the court, either by testimony or in argument, what the ultimate computation will amount to. In this case, as just stated, the plaintiff had proved beyond question a loss of $1,500 per year, and this for her life, and that her age was twenty-six. The rest is matter of calculation or computation, using as the necessary basis material of which the court may take judicial notice,

the chief of which is not the expectancy of life, as we shall see later, but the annuity tables. The plaintiff had given the court full information, and it was for the court to determine the present liquidated amount which would make her good, in the best way it was able. This involved the necessary use of annuity tables. In a case of loss of earnings for life, in *Nelson* v. *Branford L. & W. Co.*, 75 Conn. 548, 553, 54 Atl. 303, we said: "While no evidence was offered, from tables of mortality or otherwise, of the boy's expectation of life, none, in a trial to the court, was needed, for judicial notice could be taken of the probability which such tables disclose." 23 Corpus Juris, p. 163. But, after all, the question of judicial notice, though discussed, is not necessarily involved in this case. The record shows that the court was placed in possession of all the facts necessary to reach a conclusion by the quotation from the only table applicable, the annuity table. Doubtless, the parties may furnish the court with tabular computations which may be applied to the facts proved. This may be convenient, but in such cases is not a necessary prerequisite, for the court may ascertain this for itself. The situation here, however, is that the plaintiff, by putting in evidence Exhibit D, did furnish the basis on which the calculation of the court could be, as it was in fact, made. Undoubtedly this exhibit was put in evidence for this very purpose. The defendant, not having made any objection or suggested any limitation of its purpose, is concluded from now disputing its use by the court, for it certainly was relevant. Some evidence on computation having been introduced by the plaintiff, if the appellant disputed its relevancy and admissibility on any ground, as that it was unverified hearsay, it should have done so either by objection to the evidence offered or by introduction of evidence more to its satisfaction. The claim is nowhere made

that the testimony was not in fact a true statement from the tables of the company, or that the tables themselves were not accurate. The court was justified in treating the contract to provide $1,500 per year for life as though a contract for an annuity. Annuity is variously defined and not always with precisely the same meaning. In *Bartlett* v. *Slater*, 53 Conn. 102, 107, 22 Atl. 678, quoting from 2 Williams on Executors, [809], it is said to be "a yearly payment of a certain sum of money granted to another in fee, or for life, or for a term of years, charging the person of the grantor only." It is "a stated sum, payable annually." 3 Corpus Juris, p. 200. "The income or interest of a certain fund is not an annuity, but simply profits to be earned." *Bartlett* v. *Slater*, *supra*. An unqualified obligation to pay $1,500 per year for life is the financial equivalent of an obligation to provide an annuity of $1,500 per year for life. See also *Mower* v. *Sanford*, 76 Conn. 504, 57 Atl. 119; *Hurd* v. *Shelton*, 64 Conn. 496, 30 Atl. 766; *Belfield* v. *Booth*, 63 Conn. 299, 27 Atl. 585; *Tracy* v. *Strong*, 2 Conn. 659. Hence, to get the exact financial equivalent of the contract, the court would naturally and justifiably—as, indeed, Mr. Strakosch at one time did, in considering making provision for an income by an annuity—turn to the most exact equivalent, the purchase of such an annuity; and therefore the court, to do exact and complete justice, provided for the power on the part of the plaintiff to purchase a life annuity the exact equivalent of what the contract had offered and of which, by the breach, the plaintiff had been deprived. *Parfitt* v. *Chambre*, L. R. 15 Eq. Cas. 36, 40. And the court further did it in such a way that if the plaintiff applied the money, as she had the power to do, she would be relieved from personally assuming a risk based on her expectancy of life which might, if she were long-lived, leave her at the end without this in-

come, and she was also relieved of the risk due to the shifting values of investments in trust funds and the shifting rates of interest and the risks of management during a long period of years, of having to rely upon what was not a fixed sum or anything in fact similar to a yearly fixed sum, but the fluctuating profits of an invested fund, a risk well illustrated by that contained in Mr. Strakosch's own thought in one place as expressed in a letter of his in evidence, where he says: "I could put some good copper stocks in trust and get a high interest without losing the capital in the end." It will hardly be disputed that a trust fund of copper stock, which might extend over a period of forty years, would be attended with considerable risk as the source of the fixed sum of $1,500 per year.

The appellant further says that the court has found that $20,000 would reasonably produce $1,000 per annum. If so, why, by the same token, will not $30,000 produce $1,500 per annum? The answer to that is that the income provided for extends over a period of thirty-eight years; that the provision for $20,000 was treated as already made as an absolute gift, to which she would be entitled to the interest, and by the contract, for the purpose of determining the amount of the new contract, this interest must have been reckoned at some reasonable amount at that time, which was fairly estimated at five per cent. The new provision to be made was something yielding the precise sum of $1,500 per year for this period of about thirty-eight years, and not expressed to be a sum the interest of which at some given rate would be $1,500 per year. And the appellant contends that the measure of damage should be such a sum the interest upon which, together with the $20,000 legacy, would reasonably produce $2,500 a year income during the probable term of the plaintiff's life according to the tables, and leave no balance at the end of this term.

If we are correct in regarding Mr. Strakosch's contract as applied to the $1,500 per year as the same as an agreement for an annuity, the appellant is in error in assuming that the plaintiff's right, which is one of present purchase, i. e., present value, should be based at all upon expectation of life as shown by the mortality tables. This is very clearly explained in the introduction to Giauque & McClure's Present Value Tables, pp. 4, 5. The distinction is important, and we quote as follows: "Many persons, with but an imperfect knowledge of the subject, erroneously suppose that the value of a vested dower or curtesy is found by calculating the value of an *annuity certain* for a number of years equal to the expectation of life of the widow or widower. This, however, is by no means the case, as is well known to actuaries and those who have more carefully investigated the methods of computing life annuities. Indeed, the number of years given as the expectation is not used in computing a life annuity at all. For example, suppose the value of a widow's dower to be $100 and her age 30. To find the present value of her dower, first the present value of $100 due one year hence is found and multiplied by the chance of the widow's living one year; then the present value of $100 due in two years is found and multiplied by the chance of her living two years; and finding in the same manner the present value of each year's payment to the extremity of human life, which, according to the Carlisle Table, is 104 years; the sum of all these present values is the present value of the annuity." And later, on page 5, summarily, the method is stated: "In finding the true value of a life annuity, the probability of completing each year is discounted for every year a life may complete, according to the tables."

The computation relating to annuity is complicated, as appears from the books. A court must use tables

Kelly *v.* Waterbury.

prepared by experts, and here the court did use a table prepared by the experts of one of the oldest and largest insurance companies, and was entitled to use the one introduced without objection. A given sum per year for the expectancy of life is by no means the same thing as an annuity of that sum for life. The court rightly recognized this distinction in its judgment for an amount that would purchase the annuity.

There is no error.

In this opinion the other judges concurred.