NARCISSA M. SIMS, ADMINISTRATRIX, (ESTATE OF GORDON SIMS) *vs.* NELSON S. SMITH.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 12th—decided July 5th, 1932.

*Morris Lubchansky,* with whom was *Russell H. Corcoran,* for the appellant (defendant).

*Thomas M. Shields,* for the appellee (plaintiff).

MALTBIE, C. J.  The defendant, a police officer of the city of new London, shot and killed plaintiff's intestate while the latter was attempting to escape from his custody after having been placed under arrest. He assigns error in the court's charge as to the law controlling the legality of his arrest of the plaintiff's intestate.  To test the correctness of the charge upon this point it is necessary to consider only certain facts which, from the finding of the evidence offered by both parties, appear to be undisputed.  The defendant arrested Sims, the plaintiff's intestate, upon the complaint of one Burhoe that Sims had committed adultery with Burhoe's wife.  Sims resisted arrest, wrenched himself free from the defendant, and fled into an alley. The defendant fired several shots at him one of which struck him causing his death.  The defendant had no

warrant for the arrest of Sims for adultery, but claimed that he had arrested him on speedy information, that he had the right to arrest him upon such information without a warrant, and was justified in shooting him since he was resisting and attempting to escape from a legal arrest. The court charged the jury that, if they found that the defendant was justified in believing that he had speedy information of the commission of adultery by Sims, he was justified in arresting him for that act without a warrant, and was further justified in shooting Sims if the latter was fleeing from arrest for such felony. Conversely the court charged that if the defendant did not have reasonable ground for belief that he had received speedy information that Sims had committed adultery, he had no legal right to arrest him for that crime without a warrant, and in that event was not legally justified in shooting and killing Sims while the latter was fleeing from such arrest.

The defendant assigns error in this portion of the charge, and in the failure of the court to charge that a peace officer has the right to arrest without a warrant one whom he had probable ground to suspect of having committed a felony, even though the information was not imparted to him speedily after the felony was committed. The defendant did not request the court to so charge, the request being to the effect that he had the right to arrest without a warrant any person suspected of having committed a felony on the speedy information of others. The defendant's claim upon the trial was that, in making the arrest, he had acted upon speedy information, and that the arrest was therefore legal. His present claim is that a peace officer may arrest without a warrant for a felony committed at any time in the past. The claim of error now made is without merit. It is generally held, it is true,

that at common law a peace officer could arrest without a warrant one whom he had reasonable ground to believe had committed a felony, though no felony had in fact been committed, and that there was no requirement that information of the crime must have been received speedily after its commission. The rule is otherwise in this State by statute. General Statutes, § 239, provides that police officers and other peace officials "in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the offender shall be taken or apprehended in the act or on the speedy information of others; and all persons so arrested shall be immediately presented before proper authority." The defendant contends that the history of this legislation indicates that it was not the intention of the legislature to limit the common-law right of arrest without a warrant. In the Revision of 1821, p. 132, it was provided that "constables shall have power . . . without warrant, to apprehend such as are guilty of profane swearing, drunkenness, or sabbath breaking, . . . provided they be taken and apprehended in the act, or on the present information of others." In 1867 this was amended to include certain other and different misdemeanors. At common law an officer could arrest without a warrant for certain misdemeanors but only when they had been committed in his presence, and this legislation extended that right to cases when the arrest was made on speedy information. Except for changes not here material, the statute took its present form in 1875. Revision of 1875, p. 34. The statute then enacted and now in force makes no distinction between misdemeanors and felonies, but defines and prescribes the limitations upon peace officers in making arrests without a warrant "for any offense." We fail to find in the history

of this legislation any indication that the legislative intent, in the enactment of this statute, was other than that which is apparent upon its face; on the contrary the change in the language clearly indicates an intention to broaden the provision requiring that arrest without a warrant should be upon speedy information, unless the offender is taken in the act, to cover not only misdemeanors but any offenses, including felonies. *McKenna* v. *Whipple,* 97 Conn. 695, 118 Atl. 40, and *Price* v. *Tehan,* 84 Conn. 164, 79 Atl. 68, cited upon appellant's brief, were both cases involving arrests for misdemeanors, and in our discussion of the applicability of the statute to arrests made for such offenses, there was no intimation that it did not also apply to arrests for felonies.

There is sound reason for our statutory limitation of the common-law right to arrest without a warrant. The right of personal liberty is one of the fundamental rights guaranteed to every citizen in our Constitution, which provides that "no person shall be arrested, detained or punished, except in cases clearly warranted by law." Connecticut Constitution, Article First, § 10. The right to arrest without a warrant had its origin in the necessity of preventing the escape of offenders during the period of delay incident to the procuring of warrants. When there is time to procure a warrant without danger of the escape of the offender an arrest should not be made without it. Our statute effectuates that result by requiring a warrant except when the offender is apprehended in the act or upon speedy information, in which cases ordinarily there would be no opportunity to obtain a warrant.

Statutes have been enacted in many other jurisdictions defining and limiting the power of peace officers to arrest without a warrant, some of which are declaratory of the common-law rule and others adopt differing

requirements. See Amer. Law Inst., Code of Criminal Procedure, Tentative Draft No. 1, § 21, and commentary to that section at page 148 *et seq.* Where the right is regulated by express statutory provision an arrest except as authorized by the statute is illegal. *Stearns* v. *Titus,* 193 N. Y. 272, 275, 85 N. E. 1077; 5 Corpus Juris, p. 395, § 23. Under the circumstances of this case the court charged the jury with sufficient accuracy when it said that the defendant had no legal right to arrest Sims for adultery without a warrant, unless he had reasonable ground to believe that he had received speedy information of the commission of that crime.

The defendant complains of the charge as to damages in two respects: First, in that the trial court failed to present to the jury a mortality table or other instruction or other basis for determining the decedent's expectation of life; and secondly, in that it failed to instruct them that in considering the probable earnings of the deceased, had he lived, they should take into account the natural incidents of life, which might reduce his aggregate earning capacity, such as accident, sickness, disability, old age and the like. The trial court evidently desired to make its instructions as to damages in an action based upon death by wrongful act as simple and concise as possible. But praiseworthy as is such an attempt, it requires great care on the part of a court to see that it does not result in the omission of some essential element necessarily to be considered. Where, as in this case, the court is instructing the jury as to damages based upon the loss to the estate of a decedent by reason of his death, not merely is it necessary to instruct them to consider the probable current earnings of the decedent, had he lived, but also the probable length of time during which such earnings would be realized. In consider-

ing damages based upon a permanent loss of earning power of a minor we said: "Plaintiff offered to prove, by a qualified witness, the expectancy of life of the plaintiff from the American Mortality Tables, for the purpose of showing the length of life of the plaintiff during which he will suffer from the permanent injury for which he sues, and to show how and for what period the earning capacity of the plaintiff will be affected. Defendant's counsel objected to this offer as irrelevant. The court properly admitted the evidence. It would be impossible to determine the period the plaintiff would suffer from the effects of the injury, nor the length of time he would lose in his capacity to earn unless the probable duration of the plaintiff's life was known. The method adopted by the plaintiff of proving this was the customary one and the best method thus far found for establishing this fact." *Jackiewicz* v. *United Illuminating Co.*, 106 Conn. 302, 307, 138 Atl. 147; and see *Demonde* v. *Targett*, 97 Conn. 59, 64, 115 Atl. 470.

In determining the probable duration of the decedent's life, the expectancy shown in the mortality tables may well be qualified in the judgment of the jury by the physical condition and surroundings of the decedent and the natural incidents of life, which in the normal process of existence might be expected to reduce the aggregate earning capacity. "Accident, sickness, disability, old age and the like, are such common incidents of life that they are to be expected in greater or less measure by all men, and certain of them especially by men in certain employments or environments. Any true estimate of what a given man may be expected to do in the future, especially in the way of earning, must take note of them, and one which ignores them is not impartial." *Lane* v. *United Electric Light & Water Co.*, 90 Conn. 35, 39, 96 Atl. 155.

Any adequate instruction to the jury upon damages based upon the loss to the estate of a decedent by his death necessarily involves a consideration of the probable duration of his life; and the fact that no evidence is offered as to this does not prevent the trial court from placing the matter before the jury, because the court is entitled to take judicial notice of accepted mortality tables. *Nelson* v. *Branford L. & W. Co.*, 75 Conn. 548, 553, 54 Atl. 303; *Strakosch* v. *Connecticut Trust & Safe Deposit Co.*, 96 Conn. 471, 490, 114 Atl. 660. The trial court did in this case instruct the jury that they should apply their best judgment based upon their "experience and knowledge of life and all its vicissitudes and determine the fair value of the life of Gordon Sims to his estate." But nowhere did it call the jury's attention to the necessity of considering the probable duration of the decedent's life or relate the instruction quoted to this element in the problem of recoverable damages. In this respect the charge was clearly defective.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.