STATE OF CONNECTICUT *v.* FRANK J. CARROLL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 7—decided Juiy 20, 1944.

*Lorin W. Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney, for the appellant (state).

*David Goldstein,* for the appellee (defendant).

ELLS, J. The information charged the defendant with manslaughter and alleged that he committed an assault and battery upon Charles Kelly by striking him and forcibly throwing him to the ground, thereby causing his death. The defense was that the deceased sustained his fatal injuries while the defendant, a police officer of the city of Bridgeport, was attempting to arrest him, without a warrant but upon the speedy information of others, within the terms of General Statutes, § 239. The jury returned a verdict of not

guilty, and the state, with the permission of the trial court, has appealed.

Many of the basic facts are not in dispute. Kelly was a resident of Bridgeport, lived with his wife on Sherwood Avenue and was employed by a large manufacturing plant as assistant traffic manager. At about 10:30 o'clock on the night of July 6, 1943, he left his house, carrying a small suit case, intending to go to the home of his grandmother on Norman Street. After proceeding south on the west sidewalk of that highway, he stopped and sat down on the steps of a store doorway. Because of dimout regulations the street lights were shaded so that no light was cast upon the place where he was sitting. The defendant and officer Murphy were patrolling the locality in plain clothes. They observed a man sitting on these steps in the dark and decided to ask him what he was doing there. As they approached, Kelly picked up his suit case and started diagonally across Norman Street, whereupon the defendant called out to him to stop, and said he wanted to speak to him. Kelly stopped in a dark place on the easterly sidewalk, and the officers produced police badges from their pockets, showed them to Kelly and told him that they were policemen. There was evidence from which the jury reasonably could have found that the defendant then said, "I would like to have you step up to the street light. I would like to ask you some questions"; that Kelly said, "I haven't done anything"; that the defendant replied, "You are not being accused of doing anything, but I must ask you some questions"; and that Kelly started to run back across the street and the defendant pursued him, tackled him and went down on top of him, causing injuries which unfortunately resulted in death.

The defendant claims that under the circumstances,

especially because of Kelly's suspicious conduct, he was justified in attempting to arrest Kelly because he had reasonable grounds to believe that he had speedy information to the effect that Kelly had committed a crime, and particularly that he had committed assaults on two women. For the purpose of proving that he was acting upon speedy information, the defendant offered evidence that the superintendent of police had received information of two attacks upon women made by unknown assailants, one on July 1, 1943, at the place where Kelly was arrested, the other on June 28, 1943, at a point about three blocks away. As a result of these attacks, the superintendent caused officers to be detailed to patrol the area in plain clothes. On the evening of July 6 the defendant and officer Murphy were assigned for this patrol, and the defendant was instructed to go "to do his best to see that the women were protected." The state objected to the evidence on the ground that it did not tend to prove justification, there being no evidence that he had speedy information from others of the offenses, or that Kelly was implicated in them or in any other crime or misdemeanor. The court admitted the testimony and charged at some length upon the claims of proof based upon that evidence. Error is assigned in the rulings and in the charge on this situation, but it is not particularly claimed that the charge misstated the law, if the evidence was properly before the jury.

Section 239 reads as follows: "Arrest without warrant. . . . police officers . . . shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the offender shall be taken or apprehended in the act or on the speedy information of others; and all persons so arrested shall be immediately presented before proper authority." The common law on this subject and the history of

the statute were reviewed in *Sims* v. *Smith*, 115 Conn. 279, 161 Atl. 239. We said (p. 281): "It is generally held . . . that at common law a peace officer could arrest without a warrant one whom he had reasonable ground to believe had committed a felony, though no felony had in fact been committed, and that there was no requirement that information of the crime must have been received speedily after its commission. The rule is otherwise in this State by statute." The burden of the defendant's brief is that the common-law rule must be read into the statute. The claim is unsound. We further said in the *Sims* case that our statute makes no distinction between misdemeanors and felonies, but defines and prescribes the limitation upon peace officers in making arrests without a warrant for any offense; that it was the intention of the legislature to limit the common-law right of arrest without a warrant; that an arrest, except as authorized by the statute, is illegal; and that the statute requires a warrant except when the offender is apprehended in the act or upon speedy information. The precise holding was (p. 284) that under the circumstances of the case "the court charged the jury with sufficient accuracy" when it said that the defendant had no right to arrest Sims for adultery without a warrant unless he had reasonable ground to believe that he had received speedy information of the commission of that crime. In *McKenna* v. *Whipple*, 97 Conn. 695, 701, 118 Atl. 40, we said that the statute was passed primarily to guide officers in dealing with persons believed to be committing, or to have committed, misdemeanors, and that the officer had the right to arrest the plaintiff for the misdemeanor in question upon receipt of speedy information from certain named persons.

Applying these principles of law to the circumstances of the present case, we decide that the offered

evidence did not tend to prove that the arrest was justified. It was not relevant and material as tending to prove that the defendant had received speedy information from others of the commission of an offense. The offense was admittedly the attacks on the women, one having occurred five days before the arrest and the other eight days before. Assuredly he had not received his information promptly after the commission of the offenses. Kelly's conduct was suspicious, but it did not constitute "the speedy information of others." The officer arrested Kelly on suspicion, without a warrant. The statute does not justify the arrest.

In its charge the court reviewed the evidence it had admitted over the state's objection, defined speedy as meaning "quickly, swiftly or promptly," and gave the following instruction: "I charge you that this accused would have had to receive, or would have had to have had reasonable ground to believe that he had received speedy information, as I have defined that phrase to you, not only of the commission of these attacks but also that Charles Kelly, the deceased, was involved in those crimes. If you believe from the evidence in this case that the accused had reasonable ground to believe that he had received speedy information of the commission of those crimes to which I have already referred, and that Charles Kelly committed those crimes or was involved in the commission of those crimes, then the accused had the right under the provisions of our law to arrest him." The charge, in and of itself, was sufficiently favorable to the state. The error is that the evidence was not relevant or material to prove that the arrest was justified within the terms of the statute and should not have been admitted for this purpose.

In summary we state that the statute controls; that it does not mean that a peace officer may arrest with-

out a warrant for any offense committed at any time in the past; it does mean that he may make such an arrest when the offender shall be taken or apprehended in the act or when the officer has received promptly, after the commission of a crime, information, which he has reasonable ground to accept as true, that the person he is arresting was concerned in it.

There are two matters which came before the court in its rulings and charge, a settlement of which, though not essential to the disposition of the appeal, will materially assist on a retrial. The speedy information from others which justifies an arrest is information that the person arrested was guilty of a crime or at least implicated in it. As an addition to the history of the statute contained in *Sims* v. *Smith*, supra, 282, we add the Code of 1650 (1 Col. Rec., p. 522); there constables were authorized to arrest certain offenders without warrant, "provided they bee taken in the manner, either by sighte of the Constable or by present information from others." See also *Chandler* v. *Rutherford*, 101 Fed. 774, 778, 43 C. C. A. 218; *Holley* v. *Mix*, 3 Wend. (N. Y.) 350; *Farnam* v. *Feeley*, 56 N. Y. 451, 453.

The second matter is this: Apparently counsel for the defendant, throughout the trial, stressed, and in fact quite largely built his defense upon, the words in the *Sims* case to the effect that the officer must have "had reasonable ground to believe" that he had received speedy information. The trial court sedulously followed that particular form of expression in its charge. All we said in the *Sims* case was that the trial court charged the jury "with sufficient accuracy" when it used that form of expression. All that the statute says is "speedy information." What the trial court in the *Sims* case meant in its charge, and what we inferentially approved, was that, when the information

comes to the officer, he may act upon it if he has reasonable ground to accept it as accurate; that is to say, he does not have to stop to inquire into the authenticity of the information or act at his peril. The question should be divided: first, did the officer have speedy information; second, was he justified in accepting it as a basis for acting on it.

Kelly had not been concerned or implicated in any offense. He had a right to be on the street where he was; he may have been afraid that the men who accosted him were robbers, and may have run to escape them. The attack upon him, from his point of view, was a gross violation of his fundamental rights. "No person shall be arrested, detained or punished, except in cases clearly warranted by law." Const. Conn. Art. I § 10. On the other hand, we realize that from the officer's point of view there was considerable reason for his conduct. He was detailed to patrol a certain area and to stop attacks on women. He found Kelly acting suspiciously in the very place where an attack had occurred and tried to question him, and Kelly ran away. The case is not without difficulties, and the result may appear harsh from the defendant's viewpoint, but we can only apply the statute. It restricts the right of a police officer to arrest. The legislature has spoken and, particularly in the *Sims* case, supra, we have interpreted its words. Unless that case is overruled, the result here must follow. In that case and in *Price* v. *Tehan*, 84 Conn. 164, 169, 79 Atl. 68, it is pointed out that the purpose of the close restriction upon arrests without warrants is to protect the liberty of the innocent. We cannot say that the legislature adopted a wrong public policy when it weighed that liberty against the possibility that some guilty person might escape.

The court was in error in admitting the testimony complained of.

The state claims error in rulings other than those which we have considered, but, because of their relative unimportance and the nature of the appeal, it is not necessary to discuss them.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.