·RAFAEL TORRECH RÍOS, Plaintiff and Appellee, *v.* JUAN RAMÓN RAMOS RODRÍGUEZ ET AL., Defendants and SOCIEDAD CIVIL "RAMOS HERMANOS," Defendant and Appellant.[1]

No. 11782.   Decided December 21, 1961.

MR. JUSTICE SERRANO GEYLS, dissenting.

Torrech Ríos sued the Ramos-Rodríguez brothers and the appellant partnership alleging that they owed him the following amounts in connection with a certain property which Torrech purchased from the partnership on March 24, 1953: $1,867.22 of property tax corresponding to the first and second semesters of the tax year 1952-1953, and $1,976 of interest on a mortgage debt for the payment on which Torrech withheld the sum of $76,000 in the said transaction. The partnership denied that it owed any sum to the plaintiff, and alleged that in the sale Torrech had agreed to as-

---

[1] The majority opinion of the Court appears in 83 P.R.R. 169.

sume payment in full of the loan, including interest and taxes, as part of the "consideration" of the sale.

The case having been set for trial, the plaintiff offered the testimony of Manuel Pérez Fernández, an officer of the Federal Land Bank of Baltimore, the entity holder of the mortgage credit on the property. He testified, briefly, that the first annual instalment of the debt having become due and paid on August 1, 1952, the debt was reduced to $76,000; that the next instalment would become due on August 1, 1953; that up to March 24, 1953, the date of the sale, the loan had earned $1,976 interest; that on November 20, 1953, Torrech paid $3,040 interest, including the aforesaid $1,976; that interest was payable on August 1 of each year; that on the date Torrech purchased the property, demand for payment of interest could not be made to him; and that around that time neither Torrech nor his attorney had gone to the bank to inquire about the interest.

The next witness, Lic. Jorge M. Morales, testified on the collection steps taken with the defendants. Plaintiff Torrech testified that on August 28, 1953, he had paid $1,861.22 of property taxes for the fiscal year from July 1, 1952 to June 30, 1953. He further testified that the defendants had not paid him the amounts for interest and taxes. The plaintiff also offered pertinent documentary evidence.

The defendants next stated their theory to the court, which was the same as that set forth in the answer to the complaint; in other words, that the plaintiff, "as part of the consideration of such transaction," agreed to assume and did assume the payment of the interest accrued and the unpaid taxes. They announced to the court that they would offer pertinent evidence. The plaintiff objected alleging that such evidence was contrary to § 25 of the Law of Evidence. After arguing the matter at length, the court granted leave to the parties to submit memoranda and later held that the evidence offered by the defendants was inadmissible. It stated that

the terms of the contract are "clear and specific," and added: "It is true that neither the mortgage interest nor the property taxes were expressly mentioned in the contract, but it is stated in the latter that the mortgage was reduced to $76,000, when the fact is that it amounted (including interest) to $77,976; and, most important of all, the defendants bound themselves to pay off any lien other than the mortgage (in the sum of $76,000) which may encumber the property." Consequently, it sustained the complaint.

The Court affirms that judgment and points out that the purpose of the evidence offered "was not to show that the consideration was different from that stipulated in the contract," but "to vary one of the clauses of the contract which is clear and specific, that which provides 'that if any lien should appear on the rural property, plantations, and equipment which by virtue hereof have been sold to the appearing party, Rafael Torrech Ríos, other than the mortgage which encumbers the property in favor of the Federal Land Bank of Baltimore, Porto Rico Branch, [the vendor] hereby agrees and binds itself to cancel the same without any cost to the vendee'." It is added at the end that, "It being the purpose of the evidence excluded by the court to vary one of the clauses of the written contract, the error assigned was not committed."

Let us first examine the rule which declares inadmissible the extrinsic evidence when the purpose thereof is to vary one of the clauses of the contract. I believe that that rule is not supported by our legal provisions cited in the opinion of the Court, nor by the purposes of the "parole evidence" rule incorporated therein. With characteristic precision, Wigmore explains the matter: "It is not uncommon to speak of the present rule as a rule against *varying the terms of the writing.* No doubt that is precisely the result of applying the rule. But it can never serve as a test to determine in the first instance whether the rule is applicable. The ap-

plicability and the effect of the rule are distinct things. To employ this phrase as a test is to reason in a circle; for it is to attempt to decide whether something conceded to be different from the writing ought to be excluded, by showing that it *is* different. All the phrases about transactions that 'vary,' or 'contradict,' or are 'inconsistent,' involve the same futility. The fundamental question is as to the intent of the parties to restrict the writing to specific elements or subjects of negotiation... and if that intent existed, then the other subjects of negotiation can be established, even though they be (as they usually are) different from the writing." 9 Wigmore, Evidence 102, § 2431 (3d ed.). We need not add any more to that explanation.

The evidence offered is also excluded because it was not aimed "at showing what was the real transaction between the parties and the true consideration." Yet, it was precisely and expressly offered for that: the defendants wanted to prove that the vendee had agreed to pay as "consideration" for the vendor not only the price stipulated in writing, but the interest accrued but not due on the mortgage debt and the property taxes for one year which had not become due. To that end, they intended to produce several witnesses including the authorizing notary. It seems clear to me that that offer ought to be considered as an attempt at proving that the true consideration had not been stipulated in the writing, but that it was incomplete and there was an additional verbal promise which was part of it. Corbin says: "Sometimes it is held that evidence is inadmissible to show that the stated consideration was not the whole of it and that there was an additional promise of some other performance. Such evidence as this, however, should always be listened to if it is offered as part of the process of showing that the document was not executed and assented to as a complete integration of all terms of agreement. There are many cases allowing such additional promises to be proved. These should

be followed in every case where the court does not find the existence of a complete and accurate integration as a fact. Evidence that the writing was not assented to as a complete integration may be too flimsy and improbable to be believed; the question is as to the weight of the evidence, not one of admissibility." 3 Corbin, Contracts 495–500 (1960).

A brief review of our authorities shows that we have sanctioned the admission of extrinsic evidence aimed at showing that the consideration of an obligation was different from that stipulated in the writing, either because it was an entirely different one or because it was greater or less. Since *Horton et al.* v. *Robert*, 11 P.R.R. 168 (1906), we have upheld the following rule: "No matter what consideration is expressed in a written contract the truth of the recitals is not conclusively presumed, but the true consideration can always be inquired into by the court, and evidence introduced and received to show what it was." (Page 174.) The contract in question was a loan contract stating a certain amount bearing interest at 12 per cent (which was legal at that time), and the debtor was permitted to introduce oral evidence to prove that the amount had been less and the interest higher.

In *Fernández et al.* v. *González et al.*, 16 P.R.R. 618 (1910), it was permitted to introduce parol evidence to show that a deed of sale had been executed on the verbal condition that the vendee would donate the property to the vendor's children. The authorizing notary was put on the stand and testified on this point. In *Marxuach* v. *Acosta*, 39 P.R.R. 872 (1929), extrinsic evidence was admitted to show that the consideration of a sales contract had not been the amount stated in the contract, but another real property in exchange therefor.

In *Ochoteco* v. *Córdova*, 47 P.R.R. 522 (1934), we admitted extrinsic evidence to show that in employing the words "as a loan" in the agreement, it was meant to say "as a

deposit," thereby changing completely the nature and consideration of the agreement. In *Ruiz* v. *Mario Mercado e Hijos,* 46 P.R.R. 791 (1933), extrinsic evidence was admissible to show that 100 cuerdas had been sold, even though the written agreement recited that it was 150. In *Rossy* v. *Super. Ct.; Heirs of Lloréns, Ints.,* 80 P.R.R. 705 (1958), extrinsic evidence was admissible to show that the real transaction in the sale contract was the dry lands and not the mangrove lands (although the description of the property in the deed included all the lands), and that part of the mangrove lands was to compensate two attorneys for their professional services. We said the following: "Furthermore, there is no question that it would be proper to admit evidence showing that the consideration set forth in deed... or stated in the private agreement... was not in fact what induced the parties to make those contracts. *Nor does the rule which excludes extrinsic evidence to controvert or vary the terms of a written agreement preclude proof to show what was the real transaction between the parties, even though such transaction appears to be different from that stated in a public or private instrument.*" (At 724.) (Italics ours.)[1]

As a matter of logic and of law, I see no difference between those cases and the instant case in which attempt is made to show that the consideration of the contract was not only the amount stipulated in the deed, but it included two other promises. If in the cases cited we had adopted the rule not to permit extrinsic evidence to vary the terms of the contract, our holding would have been otherwise for the evidence was *precisely* for that.

The case law of the United States, as stated by Corbin,[2] has also sanctioned in numerous cases the admission of ex-

---

[1] Examine, also, *Cabrera* v. *Colonial Bank,* 214 U.S. 224 (1909); *Villanueva* v. *Suárez et al.,* 41 P.R.R. 39 (1930); *De la Rosa* v. *Heirs of Quevedo,* 47 P.R.R. 165 (1934); *Monge* v. *Rodríguez,* 45 P.R.R. 400 (1933).

[2] *Op. cit.* at 498–500. This book contains the most complete discussion of the "parole evidence" rule I have been able to find.

trinsic evidence to show the existence of other promises in addition to those stipulated in the written contract. Thus, for example, in *Galvin* v. *Railroad Co.*, 62 N.E. 961 (Mass. 1902), a litigant who had waived a claim for damages in consideration of a sum of money stated in the written contract was permitted to show that he had also been promised an employment. In *Ayres* v. *Cook*, 43 N.E.2d 287 (Ohio 1942), the plaintiff sold her interest in a business for the sum of $2,500 stipulated in a written contract. Evidence of an oral agreement to transfer certain lands was admitted. In *Coyne* v. *Coyne*, 225 N.W. 935 (Wis. 1929), the court admitted extrinsic evidence to show that the consideration named in a written contract of sale also covered personal property in addition to the land therein described. And in *Strakosch* v. *Connecticut Trust & Safe Deposit Co.*, 114 Atl. 660 (Conn. 1921), the parties executed a written adoption agreement whereby they agreed to assume the paterno-filial relation in all respects. It was permitted to show that the daughter had signed the agreement in consideration of an oral promise of the father to leave her a sufficient sum of his inheritance to produce an annual income of $2,500. Nor are there any substantial differences between those cases and the case at bar to produce opposite results.

We are told, however, that a "clear and specific" clause of a contract bars the admission of evidence on additional promises. The clause reads:

"SEVENTH: Juan Ramón Ramos and Luis Ramos Rodríguez, in the capacity in which they appear, and their respective wives, María Piñot and Rosa Julia Buxó, state that if there should appear any lien on the rural property, plantations, and equipment which by virtue hereof they have sold to the appearing party, RAFAEL TORRECH RÍOS, other than the mortgage which encumbers the property in favor of the Federal Land Bank of Baltimore, Porto Rico Branch they hereby agree and bind themselves to cancel the same without cost to the vendee."

It is asserted that since the interest and taxes constitute liens on the property, "the vendor's obligation to pay these items appears right away from the clear terms of the transcribed clause." It is to be noted that the conclusion that the clause is "clear" and that it covers the two items, constitutes an act of construction based solely on the language of the instrument. In other words, any other evidence which may shed light on the question is excluded on the construction that the language is "clear." However, the literal interpretation of laws and contracts is so deficient and is so discredited that it is truly surprising that nowadays it is used as principal, if not as only support of a judgment. Citations on the general doctrine are unnecessary. It suffices to read Wigmore on the specific problem:

"It has occasionally been laid down that, in ascertaining, in the first instance, the parties' intent to embody or not in the writing certain subjects of negotiation, *"the writing is the sole criterion,'* i.e. no search for data of intent can be made outside the four corners of the document.

.　　.　　.　　.　　.　　.　　.　　.

"Such a proposition, however, is untenable, both on principle and in practice. In practice, it is not enforced by its theoretical advocates. In theory, its fallacy is indicated by what has been already noticed (*ante,* § 2430). The problem being to ascertain whether the parties intended a certain writing to cover certain subjects, the relation between the writing and those subjects and their conduct is necessarily involved; and all these matters must be considered. When two parties are found playing a game of chess, it cannot be told whether this is the sole and decisive game, or merely one of a series, by watching that particular game. Whether a piece of land which we see a surveyor marking out is the entirety of the owner's estate cannot be determined by looking merely at the boundaries of that piece; if we look far enough, we may find that it is only a part of a larger survey. Whether a certain box of cards represents the whole catalogue of a man's library cannot be determined by the mere contents, nor by the circumstances that they are all in one box, nor yet by the circumstance that they are arranged

alphabetically and include titles from A to Z; for perhaps he has also a separate catalogue of French and German books, or perhaps he has separate catalogues for law books and for general literature, or possibly he has taken out all the cards for books sent to the bindery. The conception of a writing as wholly and intrinsically self-determinative of the parties' intent to make it the sole memorial of one or seven or twenty-seven subjects of negotiation is an impossible one." *Op. cit.* at 102–03.

If we analyze the clause previously copied, the rest of the contract and the evidence introduced by the plaintiff are at variance with the following considerations:

1. Nowhere in the written contract is there any express agreement on the items of interest and taxes.

2. The parties accepted that the lien in favor of the Federal Land Bank was for the sum of $76,000.

3. The vendor's obligation to pay the indebtedness on account of interest and taxes arises only from the interpretation of the aforesaid seventh clause.

4. In order to accept the existence of such obligation, it must be necessarily concluded that in providing that the vendor shall cancel "any lien" on the property "other than the mortgage which encumbers the property in favor of the Federal Land Bank of Baltimore," the said clause covers the interest due precisely on that mortgage which is "excluded" and a special lien such as taxes.

5. In order not to admit parol evidence, it must be concluded that the language of the seventh clause is so clear that it can not lead to any conclusion other than No. 4.

6. The situation appears to be worse considering that the evidence for the plaintiff showed that:

a) When the deed was signed in March 1953, the vendor had already paid the previous instalment which had become due on the mortgage (August 1952), and the next instalment would become due in August 1953. Hence, no interest was due and demandable at the time the agreement was signed.

b) Nor had the tax year 1952–1953 to which the taxes refer expired. That year expired in July 1953.

In the light of all those circumstances, I can not share the view that the seventh clause is so absolutely "clear" that, without the necessity of hearing extrinsic evidence, it may be said that it imposes on the vendor the obligation to pay the interest and the taxes involved in this case, and, consequently, that such evidence be excluded to determine whether or not an additional promise on those points existed.

I further believe that, even using the primitive theory of the purely analytical construction, the plaintiff's position is no better. It is absolutely illogical to assume that in a contract as important as the one under consideration (the total amount was $250,000) the parties employed the words "another lien on the rural property" to cover current interest and tax items the existence of which was necessarily known to the vendee. It strains the credulity to admit that a transaction of such importance is carried out without checking those particulars and without reaching a definite agreement thereon. Certainly that is not the usual practice, even in transactions of less importance.

It should also be noted that there is a sharp contrast between the Court's position at present and that recently assumed in *Heirs of Ramírez* v. *Super. Ct.; Del Moral, Int.,* 81 P.R.R. 347 (1959). The question involved was the construction of the phrase "the loan accruing interest during its effectiveness at the rate of nine per cent per annum payable in monthly instalments when due," incorporated in a 1927 contract. Originally—80 P.R.R. 147 (1957)—we held that the intent of the parties had been "to agree on the payment of interest solely for the duration of the contract." That decision was based on the literal sense of the clauses of the contract, the connection between the phrase "effect of the loan" and other clauses of the contract, the term or period of three years essentially fixed for the maturity of the debt,

and the rules of construction of contracts contained in our Civil Code (81 P.R.R. 349). Later, on reconsideration, and having been appraised that the judgment appealed from had been rendered upon a motion for summary judgment, we reversed our previous ruling and remanded the case to the trial court in order that the parties would have an opportunity at the trial to offer evidence on "acts prior, contemporaneous and subsequent to the contract, and also on the other circumstances concerning the stipulation of interest, which can actually contribute to the correct investigation of the common intent of the executing parties." (P. 350.) And later, after a fair consideration and careful study, we recognized, through Mr. Justice Saldaña, that "The only terms which can be catalogued as clear are those which in themselves are lucid enough *to be understood in one sense alone, without leaving any room for doubt* ... and without necessitating for their understanding any reasoning or illustration susceptible to challenge." (P. 351. Italics ours.)

It seems obvious that our present decision departs diametrically from that doctrine, and that by the literal interpretation of a clause which evidently is neither "clear" nor "specific," even though it is so termed by the Court, we block the path to necessary evidence as to which was the real agreement of the parties. And I believe, and this is what I am actually concerned about, that the Court at this time adopts a criterion which is extremely strict in the application of the rules of evidence, particularly of such a discredited rule as the "extrinsic evidence" rule, and thus departs from the liberal course which it has followed for the past half century.

For the reasons stated, I believe that the judgment appealed from should be reversed and the trial court ordered to admit the evidence offered and to render judgment in accordance with its weighing of the entire evidence.