STATE OF CONNECTICUT *v.* ROBERT WILLIAMS

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued October 3—decided October 29, 1968

*Bernard Green,* special public defender, for the appellant (defendant).

*Donald W. Browne,* assistant state's attorney, with whom, on the brief, was *Otto J. Saur,* state's attorney, for the appellee (state).

ALCORN, J.  The defendant was charged with having narcotic drugs in his control in violation of § 19-246 of the General Statutes, with carrying a pistol on his person without a permit in violation

of § 29-35 of the General Statutes, and with knowingly having a weapon in a vehicle owned, operated or occupied by him in violation of § 29-38 of the General Statutes. After a trial to the court, he was convicted on all three counts and has appealed from the judgment.

The claims on the appeal are that he was subjected to an illegal search and seizure of weapons, narcotics and implements for the administration of narcotics, that he was denied a speedy trial, and that he was subjected to cruel and unusual punishment.

At 2:15 on a Sunday morning, a sergeant of the Bridgeport police department was patrolling alone in a section of Bridgeport noted for its high incidence of crimes of various kinds. There he met a person known to him and considered by him to be trustworthy and reliable who pointed to an automobile parked on the other side of the street and told him that a person seated in the vehicle was armed with a pistol at his waist and had narcotics in his possession. The defendant was the occupant of this automobile and was seated on the passenger's side of the front seat. The sergeant walked across the street, tapped on the window of the automobile and told the defendant to open the door. The defendant rolled down the window of the door, and the sergeant immediately reached directly to the defendant's waistband and removed a fully loaded, .32-caliber revolver from the waistband of the defendant's trousers. He thereupon arrested the defendant, and thereafter a search was made of the defendant and the automobile. The search disclosed another revolver in the trunk of the car, a machete under the front seat, twenty-one cellophane packets containing a white substance in the defendant's

wallet and six similar packets in a jar in the defendant's right-hand coat pocket. Later tests of ten of the cellophane packets established that they contained heroin. In addition, the police found, in the defendant's hat, a hypodermic needle and other paraphernalia used in administering narcotics.

The claim is that the action of the police officer in taking the loaded revolver from the waistband of the defendant's trousers was an illegal search since it was done without a search warrant and was not incidental to a lawful arrest owing to the fact that the officer had neither an arrest warrant nor grounds for making an arrest without a warrant. The defendant's argument relies primarily on a claimed failure of the state to demonstrate the reliability of the officer's informant, in the light of cases such as *McCray* v. *Illinois,* 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62, rehearing denied, 386 U.S. 1042, 87 S. Ct. 1474, 18 L. Ed. 2d 616; *Beck* v. *Ohio,* 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142; *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723; and *Draper* v. *United States,* 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327. The defendant then proceeds to argue that, since the original seizure of the loaded revolver was illegal, it was not a valid basis for the arrest which followed and that the subsequent search must necessarily be invalidated because it was not incident to a legal arrest.

The argument is not persuasive. The defendant does not suggest what alternative course he thinks the officer should have followed upon receipt of the information given to him. The situation called for quick decision and prompt action. The officer, in the line of his assigned duty and in the small hours of the morning, was told by a person he considered reliable that an automobile which was pointed out to

him was then occupied by an armed man carrying narcotics. The vehicle was parked, for no apparent reason, on a public street in a high crime area. Under those circumstances, the officer exhibited not only a correct sense of duty but commendable personal courage in walking, single-handed, across the street to confront an armed man in that locality and in the dark of the night. The arrest which followed clearly was justifiable under the "speedy information" provision in § 6-49 of the General Statutes, as construed in *State* v. *Carroll,* 131 Conn. 224, 231, 38 A.2d 798.

Under the circumstances disclosed, the action of the officer was fully justified, however, quite aside from any authority given him by § 6-49.

Neither the state nor the federal constitution forbids searches and seizures. They forbid only unreasonable searches and seizures. *State* v. *Collins,* 150 Conn. 488, 492, 191 A.2d 253. The reasonableness of a search is, in the first instance, a determination to be made by the trial court from the facts and circumstances of the case. *Ker* v. *California,* 374 U.S. 23, 33, 83 S. Ct. 1623, 10 L. Ed. 2d 726; *State* v. *Mariano,* 152 Conn. 85, 93, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962.

We are in accord with the proposition that, as a matter of common law, "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry* v. *Ohio,* 392 U.S. 1, 24, 88

S. Ct. 1868, 20 L. Ed. 2d 889. The officer "did not conduct a general exploratory search for whatever evidence of criminal activity he might find." *Terry* v. *Ohio,* supra, 30. He merely reached in the car and grabbed the loaded revolver from the place where his informant had said it would be. We hold that, under the constitution of Connecticut as well as under the federal constitution, this action did not, under the circumstances, amount to an unreasonable search and seizure. In fact, the claimed "search" was far less extensive than that found reasonable in the *Terry* case. There is no claim that, if the seizure of the loaded revolver was legal, the arrest which followed, or the search incident to it, was illegal. The claim that the defendant was subjected to an illegal search and seizure is without merit.

The defendant was arrested on October 30, 1966. On the next day, he was presented in the Circuit Court and was advised of his constitutional rights, and his case was continued until November 3, 1966. On the latter date, a public defender was appointed to represent him, and his case was continued for five days, at which time his bond was reduced to an amount which is not claimed to have been excessive. From then until December 8, 1966, the case awaited the results of a laboratory analysis of the white powder which had been found on his person, and, during the interim, several conversations took place between his counsel and the prosecuting attorney. On December 8, 1966, the defendant was presented for plea in the Circuit Court, when various motions were filed by his counsel which were heard on December 22, and, on that date, the defendant was bound over to the January, 1967, term of the Superior Court. That court was continuously and fully

engaged in disposing of criminal cases from the opening of the term until, on March 20, 1967, the defendant's special public defender, who had been appointed on February 2, 1967, made an oral motion for a trial. No other motion for a speedy trial had been made. The case was thereupon assigned for trial on April 4, 1967, and, following the trial, the judgment appealed from was rendered on April 28, 1967.

We have interpreted the provision for a speedy trial now found in article first, § 8, of the 1965 Connecticut constitution to mean that the state must proceed without unreasonable or undue delay. *State v. Doucette*, 147 Conn. 95, 107, 157 A.2d 487; *Wojculewicz v. Cummings*, 145 Conn. 11, 21, 138 A.2d 512, cert. denied, 356 U.S. 969, 78 S. Ct. 1010, 2 L. Ed. 2d 1075; see note, 57 A.L.R.2d 302, 310, 326. Each situation must be judged on the facts of the particular case; a delay may be waived, and waiver may be implied when the defendant does not object to it. *State v. Hodge*, 153 Conn. 564, 569, 219 A.2d 367; *State v. Holloway*, 147 Conn. 22, 25, 156 A.2d 466, cert. denied, 362 U.S. 955, 80 S. Ct. 869, 4 L. Ed. 2d 872. The rule generally stated is that the prosecution is entitled to a reasonable time for preparation and the defendant is to be free from vexatious, capricious and offensive delays. 21 Am. Jur. 2d 279, Criminal Law, § 243. We find nothing in the circumstances of the present case which amounts to the denial of a speedy trial.

Finally, the defendant complains that he was subjected to cruel and unusual punishment. This claim is based on the assertion that, while the defendant was confined in jail awaiting trial and unable to furnish bail, the jail physician denied him proper medication for his claimed ailments and that, because of

his condition, he was unable to eat some of the food provided for him. There is no basis in the finding for such a claim. Furthermore, there is no claim that the statutes under which he was sentenced, or the sentence imposed by the court under the statutes, amounted to cruel and unusual punishment under the eighth amendment to the constitution of the United States which is made applicable to the states by the fourteenth amendment. *Robinson* v. *California,* 370 U.S. 660, 666, 82 S. Ct. 1417, 8 L. Ed. 2d 758, rehearing denied, 371 U.S. 905, 83 S. Ct. 202, 9 L. Ed. 2d 166. Nor does the defendant suggest in what manner the treatment complained of, before trial, could form a valid basis for a reversal of the judgment of conviction.

The defendant has cited no authority whatever for his claim. The term "punishment" has been defined as "any pain, penalty, suffering, or confinement inflicted on a person by authority of law and the judgment or sentence of a court for some crime or offense committed by him." 21 Am. Jur. 2d 542, Criminal Law, § 576. A sentence which is within the statutory limits, as this sentence was, is not, as a matter of law, cruel and unusual punishment. *State* v. *McNally,* 152 Conn. 598, 603, 211 A.2d 162, cert. denied, 382 U.S. 948, 86 S. Ct. 410, 15 L. Ed. 2d 356. Lacking any assistance from counsel on either side, we have made an independent search for authority to support a claim such as the defendant now makes. While courts have entertained claims of mistreatment of various sorts, usually made by prisoners in proceedings such as habeas corpus or for an injunction, we have found no instance in which mistreatment of the sort claimed here prior to trial has been entertained as a ground for attacking, on appeal, a judgment rendered within the limits of the

statute punishing the offense. See cases such as *Wright* v. *McMann,* 387 F.2d 519 (2d Cir.); *Heft* v. *Parker,* 258 F. Sup. 507 (M.D.Penn.); *Austin* v. *Harris,* 226 F. Sup. 304 (W.D.Mo.); *United States ex rel. Yaris* v. *Shaughnessy,* 112 F. Sup. 143 (S.D.N.Y.); *Ex parte Pickens,* 101 F. Sup. 285 (D.Alas.); *Chapman* v. *Graham,* 2 Utah 2d 156, 270 P.2d 821; *Brown* v. *State,* 152 Fla. 853, 13 So. 2d 458. Consequently, we find the claim of cruel and unusual punishment to be without merit.

There is no error.

In this opinion the other judges concurred.