Robert **WILLIAMS**, Petitioner-Appellant,

v.

Frederick E. **ADAMS**, Warden, Connecticut State Prison, Respondent-Appellee.

No. 64, Docket 34826.

United States Court of Appeals, Second Circuit.

Argued Sept. 29, 1970.

Decided Dec. 16, 1970.
Reversed on Reconsideration In Banc April 14, 1971.

Friendly, Circuit Judge, dissented and filed opinion.

States District Court for the District of Connecticut raising claims identical with those which had been considered theretofore in the state courts. His petition alleged that the evidence used against him in his state court trial was the product of an illegal search and seizure. Additionally he claimed he had been denied a speedy trial. District Judge Clarie denied relief, and appellant now has turned to us. We affirm.

### I.

After a hearing, Judge Clarie found to have been substantiated the facts set forth in the Superior Court record and relied upon by the Supreme Court of Connecticut. Compendiously restated, we may note the following as here pertinent:

"At 2:15 on a Sunday morning, a sergeant of the Bridgeport police department was patrolling alone in a section of Bridgeport noted for its high incidence of crimes of various kinds. There he met a person known to him and considered by him to be trustworthy and reliable who pointed to an automobile parked on the other side of the street and told him that a person seated in the vehicle was armed with a pistol at his waist and had narcotics in his possession. The defendant was the occupant of this automobile and was seated on the passenger's side of the front seat. The sergeant walked across the street, tapped on the window of the automobile and told the defendant to open the door. The defendant rolled down the window of the door, and the sergeant immediately reached directly to the defendant's waistband and removed a fully loaded, .32-caliber revolver from the waistband of the defendant's trousers. He thereupon arrested the defendant, and thereafter a search was made of the defendant and the automobile. The search disclosed * * * * a machete under the front seat, twenty-one cellophane packets containing a white sub-

Donald A. Browne, Asst. State's Atty., Fairfield County, Conn. (Joseph T. Gormley, Jr., State's Atty.), for respondent-appellee.

Edward F. Hennessey, Hartford, Conn., for petitioner-appellant.

Before DANAHER,* FRIENDLY and HAYS, Circuit Judges.

DANAHER, Senior Circuit Judge:

Charged with carrying a pistol on his person without a permit, § 29–35 of the Connecticut General Statutes, with having narcotic drugs in his control, § 19–246, and having a weapon in a motor vehicle occupied by him, § 29–38, appellant was convicted in the Superior Court for Fairfield County, Connecticut, after a trial to the court. His conviction was affirmed on appeal. State v. Williams, 157 Conn. 114, 249 A.2d 245 (1968), cert. denied 395 U.S. 927, 89 S.Ct. 1783, 23 L.Ed.2d 2414 (1969). Thereupon he sought habeas corpus in the United

---

* Senior United States Circuit Judge of District of Columbia Circuit, sitting by designation.

stance in the defendant's wallet and six similar packets in a jar in the defendant's right-hand coat pocket. Later tests of ten of the cellophane packets established that they contained heroin." State v. Williams, *supra,* 157 Conn. at 116, 117, 249 A.2d at 246.

The Supreme Court of Connecticut decided that under the circumstances shown, the conduct of the officer was justifiable under the applicable Connecticut statutes.[1] Thus the arrest which followed was fully sustainable quite aside from any authority given the officer by § 6–49; his action was reasonable for he had not conducted a general exploratory search, he had merely grabbed the loaded revolver from the place where his informant had said it would be. In reliance upon Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court found that the course taken by the officer was far less extensive than that found reasonable in *Terry*.

## II.

■ That the findings and conclusions of the Connecticut courts were not insulated from examination by Judge Clarie is obvious. Ker v. California, 374 U.S. 23, 34, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Granting that the law of the state where the arrest without warrant took place determines its validity,

United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210; United States v. Viale, 312 F.2d 595, 599 (2 Cir.1963), we take account of the federal constitutional standard in appraising the issue here. Williams was arrested for illegal possession of a revolver. If that arrest were lawful, evidence secured as an incident thereto might properly be received. Were the facts and circumstances within the knowledge of the officer and of which he had reasonably trustworthy information sufficient to warrant a man of reasonable caution in the belief that an offense was being committed? The answer to that question determines the present issue. Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); United States v. Traceski, 271 F.Supp. 883, 885 (D.Conn.1967); cf. United States v. Rosse, 418 F.2d 38, 39, n. 2 (2 Cir.1969), cert. denied, 397 U.S. 998, 90 S.Ct. 1143, 25 L.Ed.2d 408 (1970).

■ Inevitably, issues such as ours must be resolved upon the particular facts which vary from case to case. See, e.g., the discussion by Circuit Judge (now Justice) Blackmun in Rodgers v. United States, 362 F.2d 358, 362 (8 Cir. 1966), followed in Kayser v. United States, 394 F.2d 601, 605 (8 Cir.), cert. denied, 393 U.S. 919, 89 S.Ct. 250, 21 L. Ed.2d 206 (1968); Cf. Smith v. United

---

1. Title 6, § 49, Connecticut General Statutes Annotated, provides in pertinent part:

"* * * [P]olice officers * * * in their respective precincts, *shall arrest*, without previous complaint and warrant, any person for any offense in their jurisdiction, when such person is taken or apprehended in the act or on the *speedy information of others*, and members * * * of an organized local police department * * * shall arrest, without previous complaint and warrant, any person who such officer has reasonable grounds to believe has committed or is committing a felony. Any person so arrested shall be presented with reasonable promptness before proper authority." (Emphasis added.)

The Connecticut courts have construed the statute to require that an officer "shall" arrest on the "speedy information of others," and so as an Act passed primarily to guide officers in the performance of their duties. State v. Adinolfi, 157 Conn. 222, 226, 253 A.2d 34 (1968); Sims v. Smith, 115 Conn. 279, 161 A. 239 (1932); McKenna v. Whipple, 97 Conn. 695, 701, 118 A. 40 (1922); Price v. Tehan, 84 Conn. 164, 167, 79 A. 68 (1911); and see United States v. Traceski, 271 F.Supp. 883, 885 (D.Conn. 1967).

Indeed, as bearing upon an officer's reliance upon speedy information, § 53–168 provides punishment by·fine or imprisonment or both for any person who knowingly makes to a police officer a false report or false complaint that a crime has been or is being committed.

States, 123 U.S.App.D.C. 202, 358 F.2d 833, 835 (1966) (Opinion by Circuit Judge, now Chief Justice, Burger).

So it is that our appellant relies upon Sibron v. New York, 392 U.S. 40, 88 S. Ct. 1889, 20 L.Ed.2d 917 (1968) even as he would discount the companion case involving Peters, and would reject the reasoning of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court itself spelled out a distinction in Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Where *Terry* had held that the scope of the search must be strictly tied to and justified by the circumstances involving a protective search for weapons, in *Sibron* the policeman had not been motivated by or his action limited to the objective of protection. On the contrary, *Chimel* explained, the officer had put his hand into the suspect's pocket with the purpose of finding narcotics which indeed were found.

In our case, the officer testified that he reached for the gun in concern for his own protection, and "I didn't want him to use the pistol on me, sir."

*Chimel* made clear that

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must; of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. 752, 762–763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685.

So, we turn back, once again, to the circumstances under which the arrest occurred.

Here the officer received a complaint from an informant who was known to him, considered by the officer to be trustworthy and reliable, and one who in the past, as Judge Clarie found, had supplied valuable information regarding criminal activities. Cf. United States v. Gazard Colon, 419 F.2d 120, 122 (2 Cir. 1969). At once let it be noted additionally, that this was not the usual "informant" detailing aspects of some earlier action. He described current circumstances there and then constituting a felony under Connecticut law.

This was an eye-witness, invested with "built-in credibility." McCreary v. Sigler, 406 F.2d 1264, 1269 (8 Cir.), cert. denied, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969); cf. United States v. Acarino, 408 F.2d 512, 514 (2 Cir.), cert. denied, 395 U.S. 961, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969). He pointed out to the officer that there was at that very time a car parked across the street; there was a person seated in that vehicle; that person was armed; that he had a pistol at his waist and had narcotics in his possession.

█ Since this was a Bridgeport police sergeant, it is not unreasonable to infer he was experienced. Patrolling alone in an area noted for its high incidence of crimes of various kinds, he received the complaint that a crime was then in progress. Guided by Connecticut law, he was bound to act on the speedy information then at hand. *Supra*, note 1, and compare Jackson v. United States, 408 F.2d 1165, 1169 (8 Cir.), cert. denied, 396 U.S. 862, 90 S.Ct. 135, 24 L.Ed.2d 114 (1969). He crossed the street, saw the appellant in the car, and could readily check personally on the facts made available to him. Then he

told that person to open the car door. Instead, the latter rolled down the window. The gun was at the appellant's waist just as the witness had described, and the officer seized a fully-loaded pistol. He thereupon arrested Williams.

■ That Williams, unlike *Terry*, was seated in a car is immaterial under the circumstances here. In determining whether the officer as a reasonably prudent man in the circumstances acted reasonably in the belief that his safety might be in danger, we can not fail to give due weight to the specific reasonable inferences which he was entitled to draw from the facts in light of his experience. Swift measures were required that the exact facts might be determined and that the threat of harm be neutralized. The protection of the police officer required no less.[2]

Consequent upon the arrest, immediate search disclosed that Williams had a machete at his feet under the seat of the car. The intrusion, in short, was "reasonably designed" to discover, not only the pistol, but "other hidden instruments for the assault of the police officer." Terry v. Ohio, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968).

We may properly conclude here with Chief Justice Warren that:

"* * * We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." Terry v. Ohio, *supra*, at 23, 88 S.Ct. at 1881.

■ We agree with the Connecticut Supreme Court and with the District Judge that here the arrest of Williams was valid.[3] The search incident to the arrest accordingly was lawful and the weapons and the narcotics were correctly received in evidence against Williams.

### III.

■ Appellant contends that he had been denied a speedy trial. Following appellant's arrest on October 30, 1966, there were various pre-trial motions after which the appellant was bound over from the lower court to the Superior Court. On March 20, 1967 appellant's counsel, for the first time, made an oral motion for early trial. The case was at once assigned for trial on April 4, 1967, and following trial, the judgment appealed from was rendered on April 28, 1967. We find no merit in this contention.[4]

2. Mr. Justice Black has emphasized that the test in such situations, in last analysis, turns upon "reasonableness." Preston v. United States, 376 U.S. 364, 367. 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). He is not alone in that view. Another noted jurist has observed:

It does not seem consistent with the objective of deterrence that the maximum penalty of exclusion should be enforced for an error of judgment by a policeman, necessarily formed on the spot and without a set of United States Reports in his hands, which is not apparent years later to several Justices of the Supreme Court. At least in cases of this sort, where, in contrast to confessions of dubious reliability, the evidence cannot impair any proper defense on the merits, the object of deterrence would be sufficiently achieved if the police were denied the fruit of activity intentionally or flagrantly ille-

gal—where there was no reasonable cause to believe there was reasonable cause.
H. Friendly, The Bill of Rights as a Code of Criminal Procedure, 53 California Law Review, 929, 952 (October, 1965).

3. See, generally, United States v. Thompson, 420 F.2d 536. 540–541 (3 Cir. 1970); Klingler v. United States, 409 F.2d 299, 302–307 (8 Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); cf. Chambers v. Maroney, 399 U.S. 42, 51. 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and United States v. Gorman, 355 F.2d 151, 154–155 (2 Cir. 1965).

4. United States v. DeLeo, 422 F.2d 487, 493, 496 (1 Cir.), cert. denied. 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); United States ex rel. Solomon v. Mancusi, 412 F.2d 88 (2 Cir.), cert. de-

## IV.

Appellant's argument concerning nondisclosure of the "informant" must fall. He developed no compliance with criteria such as had been set forth in Roviaro v. United States, 353 U.S. 53, 61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). There was no indication of how the informant's testimony could help establish this appellant's innocence. Rugendorf v. United States, 376 U.S. 528, 535, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). The Court has never "approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the primary one of probable cause, and guilt or innocence is not at stake." McCray v. Illinois, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967). Surely there is no absolute rule in any event as to these situations, and under the circumstances of this case, no error has been made to appear.

Affirmed.*

FRIENDLY, Circuit Judge (dissenting):

As this case was argued both in the district court and on appeal, Connecticut sought to validate the police sergeant's actions solely on the basis of "stop and frisk." Eschewing the argument that Officer Connolly had probable cause for arrest, it contended that he did have enough cause to make it reasonable to demand that Williams open the door of the car.[1] Once that proposition was established, the State's argument continued, quite logically, as follows:

(1) Since leaving Williams in the car without immediate removal of the gun would have exposed the officer to danger, he was justified in reaching into Williams' waistband and taking the gun without attempting to "pat," a course impracticable under the circumstances;

(2) Having found the gun, the officer had reasonable grounds for arresting Williams, since persons reputedly engaged in the narcotics traffic do not ordinarily have gun permits; and

(3) Since the arrest was thus valid, the search was reasonable, at least under pre-*Chimel* law.

My difficulty was, and is, not with these three steps but with the premise underlying them, namely, that Officer Connolly had "constitutional grounds to insist on an encounter, to make a *forcible* stop," Terry v. Ohio, 392 U.S. 1, 32, 88 S.Ct. 1868, 1885, 20 L.Ed.2d 889 (concurring opinion of Harlan, J.).[2]

As I read my brother Danaher's opinion, he believes that when Connolly approached Williams' car, the officer had sufficient cause not simply for a stop but for an arrest. I cannot agree. The officer's own observation—nothing more than seeing a man sitting alone in a car at 2:15 A.M. in a "high-crime" area—fell far short of what the Court held insufficient in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), which also involved the arrest of occupants of an automobile. Almost everything must therefore turn on what the unnamed informer said, and the value of his statement does not approach the requirements laid down in the three Supreme Court decisions which establish the constitutional parameters in this area. These are Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959), where the combination

---

nied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed. 2d 236 (1969); United States v. Maxwell, 383 F.2d 437, 441 (2 Cir. 1967) and United States ex rel Von Cseh v. Fay, 313 F.2d 620, 623 (2 Cir. 1963).

* The Court is indebted to Edward F. Hennessey, Esquire, of Hartford who without remuneration has so earnestly and diligently represented the appellant.

1. The State does not contend that Williams' action was voluntary.

2. It seems clear that this is the threshold issue. I do not read the Chief Justice's opinion as holding otherwise, although, as Mr. Justice Harlan indicated, 392 U.S. at 32, 88 S.Ct. 1868, 20 L.Ed.2d 889 the thought may not have been "fully expressed." If the initial intrusion is justified, the privilege of the officer to take reasonable steps believed in good faith to be necessary for his own safety scarcely requires argument.

of information and observation was held sufficient for a warrantless arrest, and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969), where affidavits for search warrants were held insufficient. In contrast to the named informer in *Draper*,[3] a "special employee" of the Narcotics Bureau who had given reliable information about narcotics for six months, the only basis for Officer Connolly's belief in the unnamed informer here was that on one prior occasion the latter had given information about homosexual activity at the Bridgeport Railroad Station, which, however, was never substantiated and did not lead to an arrest. While the officer's explanation that the suspect in the station desisted because he saw the police coming may be reasonable enough, the episode, even if it had turned out more successfully for the police, would scarcely establish the informer as an authority on narcotics or guns. In addition, the informer in *Draper* had provided a detailed description of the scenario which the suspect later performed, thus making the report one that, in the language of Spinelli, 393 U.S. at 417–418, 89 S.Ct. at 590, 21 L.Ed.2d 637 "was of the sort which in common experience may be recognized as having been obtained in a reliable way." By contrast, the informer here, assuming he existed,[4] related a single fact with no indication of how he had come upon it. The inarticulate premise for the reliability of this scant information, namely

that no one could have stated such a fact unless he had personally observed it, is precisely the view that *Aguilar*, 378 U.S. at 113–114, 84 S.Ct. 1509, 12 L.Ed.2d 723 and *Spinelli*, 393 U.S. at 416–417, 89 S.Ct. 584, 21 L.Ed.2d 637 rejected. It is as true here as in *Spinelli*, 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed.2d 637, that "this meagre report could easily have been obtained from an offhand remark heard at a neighborhood bar,"[5] and there was less, in fact nothing, in the way of meaningful corroboration by police investigation before the intrusion. I therefore turn to what I regard as the serious and doubtful issue whether, despite the absence of probable cause for arrest, Officer Connolly was nonetheless justified under Terry v. Ohio, *supra*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, in demanding that Williams open the door of the car.

It has been well said that *Terry* and the two other cases decided with it, Sibron v. New York and Peters v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 2d 917 (1968), constitute "the Court's first word—but certainly not its last— on the subject of stop and frisk * * *. [T]his was the Court's first foray into this particular thicket, and it is thus understandable that it made a conscious effort to leave sufficient room for later movement in almost any direction." La Fave, "Street Encounters" and the Constitution, 67 Mich.L.Rev. 39, 46 (1968). Of the three decisions, only in *Terry* did a majority of the Court sustain a stop and protective search where there had been less than probable cause for ar-

---

3. Named doubtless because he had died within a few days after the arrest.

4. It is cause for no small wonder that on the first suppression hearing, Officer Connolly never mentioned the informer but said he had responded to a police signal. In the subsequent hearing the informer appeared and the signal disappeared. See note 9 *infra*.

5. The majority opinion urges against this that because the alleged informant was allegedly across the street, he should be regarded as an "eye-witness" and cites McCreary v. Sigler, 406 F.2d 1264, 1269

(8 Cir. 1969), and United States v. Acarino, 408 F.2d 512, 514 (2 Cir.), cert. denied, 395 U.S. 961, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969), in support. In *McCreary*, the informant gave a detailed affidavit of his observations including the fact that he had seen McCreary in the phone booth whence the coin box was stolen and heard coins rattling. In *Acarino* the informer had given a detailed scenario á la *Draper*. Here the implicit assumption that the informer had been with Williams in the car or saw him enter it is sheer speculation.

rest.[6] The Chief Justice was at pains to make clear the limited character of the holding when he said in the concluding paragraph of his opinion, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d 889. "We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," he may make a stop and conduct a protective search under the conditions there defined.

The instant case differs from *Terry* in important respects. Officer Connolly himself observed no "unusual conduct" leading him "reasonably to conclude * * * that criminal activity may be afoot"—unless we are to say that the mere fact of Williams' sitting alone in an automobile at 2:15 A.M. in a "high-crime" area is so inherently suspicious as to justify such a conclusion—a view I would deem exceedingly dangerous. The officer's only basis for believing that Williams may have been committing a crime was the alleged tip from the not proved to be reliable, unnamed informer. See 19 Buffalo L.Rev. 680, 685–86 (1970). Moreover, what Officer McFadden saw in *Terry* was "unusual conduct" giving reason to believe that armed robbery was about to be committed; swift intervention on his part was required to prevent a serious crime of violence. Here, while Officer Connolly could well have thought that Williams would not possess the gun and narcotics mentioned by the informer merely for pleasure, he could not have believed that sale of the narcotics or use of the gun was imminent, and the record suggests that the officer had ample means for placing Williams under surveillance. See, in this connection, Mr. Justice Har-

lan's concurring opinion in Sibron, 392 U.S. at 73, 88 S.Ct. at 1907, 20 L.Ed.2d 917.

The question thus becomes whether, even though the decisions of the Supreme Court of Connecticut and the district court in this case go beyond the facts of *Terry* and the narrow statement of its holding, they are nevertheless within its rationale. This seems to lie in the passages, 392 U.S. at 26–27, 88 S.Ct. at 1882–1883, 20 L.Ed.2d 889, where the Chief Justice explained that, in contrast to an arrest, "the protective search for weapons * * * constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person"; that, because of the lesser nature of the intrusion, a smaller showing of cause may suffice; and that Terry's "reliance on cases which have worked out standards of reasonableness with regard to 'seizures' constituting arrests and searches incident thereto is thus misplaced." A further signal that the Court was thus adopting a test balancing the amount of cause required to be shown against the extent of the particular invasion of personal security was given by the citation of Camara v. Municipal Court, 387 U.S. 523, 534–537, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). See LaFave, *supra*, 67 Mich.L.Rev. at 54–56; Hall, Kamisar, LaFave and Israel, Modern Criminal Procedure 324–26 (1969).

The Court's decision that less may be required to justify a stop and a protective search than an arrest and a search incidental thereto leaves many open questions. How much less is enough? Does something depend upon the seriousness of the offense? Cf. Brinegar v. United States, 338 U.S. 160, 183, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949) (dissenting opinion of Mr. Justice Jackson).[7] What favor, if any, should be shown to

---

**6.** The search in *Sibron* was held unlawful because the officer was seeking to find narcotics rather than to protect his own safety; in *Peters* the majority found there was probable cause for arrest.

**7.** As said in LaFave, *supra*, 67 Mich.L.Rev. at 57:
   Taking into account the seriousness of the offense does not require the use of some fine-spun theory whereby each

intervention aimed at preventing crime rather than detecting it? Cf. LaFave, *supra*, 67 Mich.L.Rev. at 66; 82 Harv. L.Rev. 178, 182 (1968). Do not such factors enter into an appraisal of what the Court evidently regarded as one significant test—whether failure to take immediate action would be "poor police work"? 392 U.S. at 23, 88 S.Ct. at 1881, 20 L.Ed.2d 889. While almost everyone would agree it would have been "poor police work" for Officer McFadden to have failed to take action to foil an armed robbery by Terry and his confederates, many would think Officer Connolly would have done well enough to report what he allegedly had been told and the little he had seen.

Only future decisions by the Supreme Court can answer these and other questions. Striking the balance here as best I can in light of the few guidelines thus far available, I would hold the State had not shown sufficient cause to justify a forcible stop:

To begin, I have the gravest hesitancy in extending *Terry* to crimes like the possession of narcotics, see LaFave, *supra*, 67 Mich.L.Rev. at 65–66. There is too much danger that, instead of the stop being the object and the protective frisk an incident thereto, the reverse will be true. Against that we have here the added fact of the report that Williams had a gun on his person. I would follow Mr. Justice Harlan in thinking that "if the State * * * were to provide that police officers could, on articulable suspicion less than probable cause, forcibly frisk and disarm persons thought to be carrying concealed weapons, * * * action taken pursuant to such authority could be constitutionally reasonable." Terry v. Ohio, *supra*, 392 U.S. at 31, 88 S.Ct. at 1885, 20 L.Ed.2d 889. But, as in *Terry*, the State here has done nothing of the sort. Connecticut allows its citizens to carry weapons,

concealed or otherwise, at will, provided only they have a permit, Conn.Gen.Stat. §§ 29–35 and 29–38, and gives its police officers no special authority to stop for the purpose of determining whether the citizen has one. Indeed, as my analysis of the State's argument shows, the narcotics and the gun are inseparably linked; it is the report about narcotics on which the State pins reasonable cause to arrest for illegal possession of a gun.

If I am wrong in thinking that *Terry* should not be applied at all to mere possessory offenses, and a dictum in *Sibron*, 392 U.S. at 63, 88 S.Ct. at 1903, 20 L.Ed.2d 917, indicates that I may be, I would not find the combination of Officer Connolly's almost meaningless observation and the tip in this case to be sufficient justification for the intrusion. The tip suffered from a threefold defect, with each fold compounding the others. The informer was unnamed, he was not shown to have been reliable with respect to guns or narcotics, and he gave no information which demonstrated personal knowledge or—what is worse—could not readily have been manufactured by the officer after the event. To my mind, it has not been sufficiently recognized that the difference between this sort of tip and the accurate prediction of an unusual event is as important on the latter score as on the former. Narcotics Agent Marsh would hardly have been at the Denver Station at the exact moment of the arrival of the train Draper had taken from Chicago unless *someone* had told him *something* important, although the agent might later have embroidered the details to fit the observed facts. Cf. United States v. Comissiong, 429 F.2d 834 (2 Cir.1970). There is no such guarantee of a patrolling officer's veracity when he testifies to a "tip" from an unnamed informer saying no more than that the officer will find a gun and narcotics on a man across the street,[8] as he

offense in the criminal code has its own probable-cause standard; rather, it involves only the common-sense notion that murder, rape, armed robbery, and the like call for a somewhat different

police response than, say, gambling, prostitution, or possession of narcotics.

8. While the findings of the Connecticut courts and the district court preclude our holding that the unnamed informer did

later does. If the state wishes to rely on a tip of that nature to validate a stop and frisk, revelation of the name of the informer or demonstration that his name is unknown and could not reasonably have been ascertained should be the price.[9]

Terry v. Ohio was intended to free a police officer from the rigidity of a rule that would prevent his doing anything to a man reasonably suspected of being about to commit or having just committed a crime of violence, no matter how grave the problem or impelling the need for swift action, unless the officer had what a court would later determine to be probable cause for arrest. It was meant for the serious cases of imminent danger or of harm recently perpetrated to persons or property, not the conventional ones of possessory offenses. If it is to be extended to the latter at all, this should be only where observation by the officer himself or well authenticated information shows "that criminal activity may be afoot." 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d 889. I greatly fear that if the decision here should be followed, *Terry* will have opened the sluicegates for serious and unintended erosion of the protection of the Fourth Amendment.

I would grant the writ.

not exist in this case, we can take the danger of fabrication into account in framing a general rule.

9. The State's claim that Williams failed previously to raise this point is without foundation. At the first hearing on Williams' motion to suppress evidence, Officer Connolly testified he was in a radio car and responded to a police signal directing him to go to the Williams car. No mention of an informant was made at that time. After Williams was bound over to the Fairfield County Superior Court, a second hearing was held and the officer testified that while on patrol he met an undisclosed informant who told him that Williams was in the car with drugs and a gun. Williams' attorney asked who the informant was, but the state objected, the court sustained the objection, and Williams' attorney took an exception. Again, in his amended and second amended petitions for habeas corpus presented to the Superior Court for Hartford County, Williams claimed his conviction was illegal since his "right of confrontation and due process rights were violated by reason of the Court's failure to permit inquiry as to the identity of the police informant upon whose information the probable cause was claimed." Finally, in the Claims of Law which Williams submitted to support his federal habeas corpus petition, he mentioned that he had sought to elicit the identity of the informant but was not permitted to do so; he alleges also that at the federal habeas hearing the judge sustained an objection to questions on the informant's identity.