Robert WILLIAMS, Petitioner-Appellant,

v.

Frederick E. ADAMS, Warden, Connecticut State Prison, Respondent-Appellee.

No. 64, Docket 34826.

United States Court of Appeals, Second Circuit.

Rehearing in Banc Ordered March 3, 1971.

Decided April 14, 1971.

Hays, Circuit Judge, dissented and filed opinion.

Before LUMBARD, Chief Judge, FRIENDLY, SMITH, KAUFMAN, HAYS, ANDERSON and FEINBERG, Circuit Judges.

PER CURIAM:

Upon application by petitioner a majority of the active members of this court voted to reconsider *in banc* the decision of the panel in this case, 436 F.2d 30, on the record and briefs originally filed, without further oral argument. Both parties were invited to file supplemental briefs, and both have done so. Upon reconsideration, we conclude that on the basis of the facts then known to him, Sergeant Connolly had neither probable cause to arrest Williams nor any other sufficient cause for reaching into Williams's waistband, an action which led to the subsequent search of Williams's car and the discovery of a machete and narcotics later introduced in evidence at Williams's trial. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1969); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Since those illegally seized items should have been excluded from evidence, Williams's conviction must be set aside. Accordingly, we reverse the order of the district court denying Williams's petition for a writ of habeas corpus.

HAYS, Circuit Judge (dissenting): The facts of this case were as follows:

"At 2:15 on a Sunday morning, a sergeant of the Bridgeport police department was patrolling alone in a section of Bridgeport noted for its high incidence of crimes of various kinds. There he met a person known to him and considered by him to be trustworthy and reliable who pointed to an automobile parked on the other side of the street and told him that a person seated in the vehicle was armed with a pistol at his waist and had narcotics in his possession. The defendant was the occupant of this automobile and was seated on the pas-

senger's side of the front seat. The sergeant walked across the street, tapped on the window of the automobile and told the defendant to open the door. The defendant rolled down the window of the door, and the sergeant immediately reached directly to the defendant's waistband and removed a fully loaded, .32-caliber revolver from the waistband of the defendant's trousers. He thereupon arrested the defendant, and thereafter a search was made of the defendant and the automobile. The search disclosed * * * a machete under the front seat, twenty-one cellophane packets containing a white substance in the defendant's wallet and six similar packets in a jar in the defendant's right-hand coat pocket. Later tests of ten of the cellophane packets established that they contained heroin." State v. Williams, 157 Conn. 114, 116–117, 249 A.2d 245, 246 (1968), cert. denied, 395 U.S. 927, 89 S.Ct. 1783, 23 L.Ed.2d 244 (1969).

In Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), the Court said:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

A familiar way of testing the "factual and practical considerations of everyday life" is to ascertain what practical everday people would do in the given factual circumstances. I would suppose that very close to one hundred per cent of the people of this country, if they were asked whether in the situation in which he found himself, the Bridgeport police sergeant's actions were those of a reasonable and prudent man, would unhesitatingly reply in the affirmative. If the police officer had disregarded the information that a man sitting alone in a car in a high crime area at 2:15 in the morning had a gun stuck in his belt, his conduct, far from being reasonable and prudent, would have been bizarre and erratic.

An "exclusionary rule" which deters police officers from taking ordinary precautions against criminal conduct and encourages possession of guns, machetes and narcotics, is surely an unacceptable rule.