[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS EVIDENCE
On June 30, 1998, the New Haven Police Department seized a quantity of cocaine from a white Chevrolet Blazer that at the time was being occupied and controlled by the defendant, William Outlaw ("Outlaw"). The police seized the cocaine without a warrant. Based upon the seizure. Outlaw was arrested and charged with various narcotic offenses. Outlaw has moved to suppress the cocaine as evidence against him. Hearings were held on the motion to suppress on March 22. 1999 and April 5, 1999. In addition, on April 13, 1999 the court and counsel viewed the vehicle involved. Thereafter, the court provided counsel with an opportunity to submit briefs. For the reasons set forth herein, Outlaw's motion to suppress is granted.
FACTS
The court finds that the following facts have been established by a fair preponderance of the evidence:
On June 30, 1998 at approximately 1:40 a.m., the New Haven Police Department responded to a complaint of a robbery involving a handgun reported to have occurred on Fairmont Avenue in New Haven. Officer Marco Prancia was not assigned to investigate the robbery complaint but did monitor the broadcast that described the two suspects in the incident. The first suspect was described as a light skinned black male and the second suspect had no physical description but was said to be operating a white sport utility vehicle. CT Page 10084
A short time after hearing the description. Officer Francia was driving in the area of the Farnam Court housing project and noticed a white sport utility vehicle. There were people in the street in the area of the vehicle. One subject, later identified as Outlaw, was in the drivers seat and a second light skinned black male, later identified as Mark Brown, was standing near the driver's window. Officer Francia drove past the white vehicle turned around and approached the vehicle again. As he drove toward the white vehicle, the people who had been in the street started to disburse. The officer noticed several people carrying brown paper bags with unknown contents.
Officer Francia detained Outlaw and patted him down for weapons. No weapons were found, but the officer felt two hard lumps in Outlaw's front pockets. These turned out to be approximately $2,000 in cash. Taken in the robbery on Fairmont Avenue was $22 in cash and a gold chain. Mark Brown was also detained by police. Officer Francia contacted the officer investigating the robbery complaint, Office McKnight, and arranged for the complainants in the robbery to come to Farnam Court for a show-up identification procedure involving Outlaw and Brown. The location of the robbery was a one to one and one-half minute drive from where Outlaw and Brown were being detained in police cars. At the time that Officer Francia spoke to Officer McKnight, the police had learned the following additional facts about the robbery: (1) the vehicle involved in the robbery was described as a white Jeep Cherokee (the vehicle at Farnam Court was a white Chevrolet Blazer) and (2) the light skinned black male robber was 5'-6" tall and wore a brown hoodie and white mask (this was inconsistent with the physical appearance of Mark Brown). When the complaining victims did arrive, they did not identify either Outlaw or Brown as being involved in the robbery.
While awaiting the arrival of the complaining victims, the police inspected and ultimately seized the cocaine from inside the white Chevrolet Blazer. The courts factual findings regarding the seizure of the cocaine are discussed later in this memorandum of decision.
LAW
Notwithstanding the warrant and probable cause requirements of the fourth amendment to the United States Constitution, certain seizures are reasonable even in the absence of probable CT Page 10085 cause if there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime. Florida v.Royer, 460 U.S. 491, 498 (1983); Terry v. Ohio, 392 U.S. 1
(1968); State v. Wilkins, 240 Conn. 489, 495 (1997). When a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative stop of the suspect in order to confirm or dispel the officer's suspicions. Terry v. Ohio, supra, 392 U.S. 24. During the course of a lawful investigatory detention, if the officer reasonably believes that the detained individual might be armed and dangerous, the officer may undertake a patdown search of the individual to discover weapons,State v. Williams, 157 Conn. 114, 118-19 (1968), cert. denied395 U.S. 927 (1969). In addition, an officer conducting a Terry stop of an automobile may search the passenger compartment of the automobile for weapons, limited to areas where the weapon might be hidden, if he or she reasonably believes the suspect is potentially dangerous. Finally, as with all warrantless searches, the state has the burden of proof. State v. Copeland,205 Conn. 201, 210 (1987); State v. Badgett, 200 Conn. 412, 424, cert. denied, 452 U.S. 942 (1981). The required standard is by a preponderance of the evidence. United States v. Matlock,415 U.S. 164. 177 (1974).
DISCUSSION
The state claims that the seizure of the cocaine was pursuant to a Terry type inspection of the white Blazer. In support of this claim, the state relies on: (1) the similarity in description between Outlaw's vehicle and the one involved in the robbery and (2) the relatively short distance between the location of the robbery and the area where Outlaw was found. The state asserts that these facts provided reasonable an articulable suspicion that Outlaw had been involved in a gun robbery and therefore might be armed and dangerous. In sum, the state's position is that the police, while lawfully searching the passenger compartment of Outlaw's vehicle for weapons, discovered cocaine.
Outlaw challenges the state's claim in several respects. First, Outlaw asserts that the totality of information undermined any reasonable belief that he had been involved in the robbery. In particular he points to the following facts: (1) the difference in make between the robbery vehicle (Jeep Cherokee) and his car (Chevrolet Blazer); (2) the difference in description between Mark Brown and the alleged robber and (3) the CT Page 10086 unlikelihood that someone with $2000 cash on his person would get involved in a small time street robbery. More significantly, Outlaw claims that the police did not restrict their inspection of his vehicle to a Terry-type inspection for weapons, but indiscriminately rummaged through his vehicle.
The court finds that the police had sufficient reasonable and articulable suspicions to believe that Outlaw might have been involved in the robbery. The nature of the robbery together with the circumstances surrounding the detention of Outlaw (early morning hours, crowd in the vicinity) gave the police reason to be concerned about their safety and inspect Outlaw's vehicle for weapons.
The court's difficulty in sustaining the police seizure of the cocaine lies in the fact that based on the court's view of the vehicle, the discovery of the cocaine could not have occurred as described by the police.
During his testimony, Officer Francia described the discovery of the cocaine as follows:
Q. Did you see anything else in the car?
 A. Yeah. At that point — that was from the driver's side. At that point walked around to the passenger side and from the passenger side I observed another cooler that was on the back seat and on top of the cooler — it had a closed lid on it. Sitting on top of the cooler was a brown paper bag about yea big. I'll say maybe six inches across. Typically about the size of — maybe something you would pack your sandwich in for lunch. When I looked inside, I saw what was readily apparent to me to be narcotic contraband.
 . . . The Court: Just so I understand. The cooler is on the seat and the bag is on the cooler?
A. Correct.
The gist of the officer's testimony was that there was a beverage cooler on the back seat of the vehicle with a closed lid and a lunch-type bag was on top of the cooler. From a position outside the vehicle the officer said he looked down into the bag CT Page 10087 and saw the suspected narcotics.
When the cooler and bag were set up in the Outlaw vehicle in the maimer described above, it was physically impossible to see into the bag. Given this impossibility, the court is confronted with genuine uncertainty as to whether the inspection of the vehicle was conducted within the parameters of Terry or was an unrestricted search that exceeded a limited inspection for weapons. Accordingly, the court finds that the state has failed to sustain its burden to justify the warrantless seizure of the cocaine.
CONCLUSION
For the reasons set forth above, the motion to suppress is granted. So Ordered at New Haven, Connecticut this 20th day of July. 1999.
Devlin, J