STATE OF CONNECTICUT *v.* FLORENCIO P. PUNSALAN, JR.
(AC 22917)

Foti, West and McDonald, Js.

Argued October 28, 2003—officially released January 13, 2004

*Patrick S. Bristol*, with whom, on the brief, was *Hubert J. Santos*, for the appellant (defendant).

*Lawrence J. Tytla*, senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Florencio P. Punsalan, Jr., appeals from the judgment of the trial court, rendered after he entered a plea of guilty, convicting him of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a, sexual assault in a spousal relationship in violation of General Statutes § 53a-70b

(b), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), and attempt to commit arson in the first degree in violation of General Statutes §§ 53a-49 and 53a-111 (a) (1). On appeal, the defendant claims that (1) his sentence constitutes cruel and unusual punishment under the United States and Connecticut constitutions, and (2) the court improperly entered a standing criminal restraining order. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On October 10, 2001, the defendant pleaded guilty to a four count substitute information. On March 22, 2002, the court imposed a total effective sentence of twelve years imprisonment with ten years of special parole. The court also entered a standing criminal restraining order pursuant to General Statutes § 53a-40e, precluding the defendant from having any contact with his minor children. Additional facts and procedural history relevant to the defendant's claims will be set forth as necessary.

I

The defendant first claims that the imposition of a twelve year sentence constitutes cruel and unusual punishment under the United States and Connecticut constitutions. Specifically, the defendant claims that because of his medical condition, he should have been sentenced to home confinement. We do not agree.

The following additional facts are relevant to the defendant's claim. In March, 1999, while released on bond, the defendant suffered paraplegia as a result of an automobile accident. On October 9, 2001, following his guilty plea, the defendant was taken into custody. At his sentencing on March 22, 2002, the defendant, who submitted testimony from his physician, argued for a sentence of home confinement because of his medical condition and related needs. The court, how-

ever, sentenced the defendant to a total effective term of twelve years incarceration with ten years of special parole. Taking into account the defendant's medical condition, the court further ordered that the mittimus state the following: "The court advises the following medical treatment for the defendant. First, regular physical therapy; second, timely monitoring and replacement of medication for the defendant's stomach pump; number three, Botox shots on a regular basis every three months; four, regular and timely treatment of all illnesses, especially urinary tract infections." The defendant now argues for home confinement because he claims that as a paraplegic, he will not receive adequate medical care while in sentenced confinement. The defendant bases his argument on his contention that he did not receive adequate care while in presentence confinement.

"It is well established that an unconditional plea of guilty, made intelligently and voluntarily, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings. . . . In general, the only allowable challenges after a plea are those relating either to the voluntary and intelligent nature of the plea or the exercise of the trial court's jurisdiction." (Internal quotation marks omitted.) *State* v. *Nelson*, 76 Conn. App. 472, 474, 819 A.2d 905, cert. denied, 264 Conn. 913, 826 A.2d 1156 (2003).

In the present case, the defendant pleaded guilty to all counts of the information and does not challenge, on appeal, the court's jurisdiction, the plea agreement, the pleas or whether his sentence is within the statutory limits. Consequently, his claim of cruel and unusual punishment is not properly brought as a direct appeal from the sentencing court. See id.

The defendant bases his claim on what he alleges was a worsening of his condition while he was in presen-

tence confinement. He argues that because he received inadequate medical treatment from the department of correction prior to sentencing, the department of correction likewise will fail to provide him with adequate care during his sentenced confinement, which, therefore, would constitute cruel and unusual punishment. The defendant, in effect, is asking this court to speculate as to how he will be treated when he begins his sentence by looking to his treatment in presentence confinement. This court cannot undertake such a task. See *State* v. *Williams*, 157 Conn. 114, 121–22, 249 A.2d 245 (1968), cert. denied, 395 U.S. 927, 89 S. Ct. 1783, 23 L. Ed. 2d 244 (1969).

In *Williams*, the defendant claimed cruel and unusual punishment because while he "was confined in jail awaiting trial and unable to furnish bail, the jail physician denied him proper medication for his claimed ailments . . . ." Id., 120–21. Our Supreme Court stated that "[w]hile courts have entertained claims of mistreatment of various sorts, usually made by prisoners in proceedings such as habeas corpus or for an injunction, we have found no instance in which mistreatment of the sort claimed here prior to trial has been entertained as a ground for attacking, on appeal, a judgment rendered within the limits of the statute punishing the offense." Id., 121–22. Here, as in *Williams*, the defendant is asking this court to change, based purely on speculation, a sentence imposed within the statutory limits and the plea agreement. We cannot engage in such speculation.

In further support of this court's refusal to entertain such a claim by speculating as to how the defendant might be treated while in sentenced confinement, it is relevant that the sentencing court specifically ordered that the mittimus reflect the defendant's medical requirements, including his need for physical therapy, Botox injections and maintenance of his stomach pump.

Because such an order was not in place when the defendant was in presentence confinement, which is the period of time that the defendant asks this court to use in speculating about the treatment he could expect to receive while he is in sentenced confinement, we see no basis on which to entertain a claim of cruel and unusual punishment in an appeal from the sentencing court.    .

This appeal is not an appropriate means by which the defendant can claim cruel and unusual punishment.[1] Consequently, we conclude that the sentence imposed by the court was proper.

## II

The defendant next claims that the court improperly entered a standing criminal restraining order pursuant to § 53a-40e precluding him from having any contact with his minor children. Specifically, the defendant argues that § 53a-40e does not allow the court to enter such a restraining order for the benefit of anyone except the victim.[2] We do not agree.

The defendant's claim requires this court to interpret § 53a-40e. "Statutory construction . . . presents a question of law over which our review is plenary. . . . According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Citation omitted; internal quotation marks omitted.) *Regency Savings Bank* v. *Westmark Partners*, 70 Conn. App.

---

[1] The defendant's claim more properly is brought, for example, in the form of a petition for a writ of habeas corpus challenging the conditions of his confinement.

[2] The defendant does not challenge the court's authority to impose such a restraining order insofar as it applies to the victim.

341, 344–45, 798 A.2d 476 (2002). Furthermore, "we will . . . in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning." (Emphasis in original.) *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003).

Section 53a-40e (a) provides in relevant part that if a person is convicted of a violation of one of the enumerated offenses[3] against a "family or household member . . . the court may, in addition to imposing the sentence authorized for the crime under section 53a-35a, if the court is of the opinion that the history and character and the nature and circumstances of the criminal conduct of such offender indicate that a standing criminal restraining order will best serve the interest of the victim and the public, issue a standing criminal restraining order which shall remain in effect until modified or revoked by the court for good cause shown." General Statutes § 53a-40e (a). Section 53a-40e (b) further provides that "[s]uch standing criminal restraining order may include *but is not limited to* enjoining the offender from (1) imposing any restraint upon the person or liberty of the victim; (2) threatening, harassing, assaulting, molesting, sexually assaulting or attacking the victim; or (3) entering the family dwelling or the dwelling of the victim." (Emphasis added.) General Statutes § 53a-40e (b).

Although research of the scant legislative history provides little insight into the issue presented, it can be ascertained from the language itself that such an order precluding the defendant from having contact with his

___

[3] The defendant was convicted of two of the enumerated offenses required by § 53a-40e: Attempt to commit murder in violation of § 53a-54a, and sexual assault in a spousal relationship in violation of § 53a-70b (b).

minor children is within the scope of the statute. As seen by the clear limitation in subsection (a) to crimes against a "family or household member," the statute's overarching goal is to prevent domestic violence. Furthermore, the language of the statute asks the court, in entering such an order, to consider not only what will best serve the victim, but also to consider what will best serve the public, thereby demonstrating that the statute aims to protect more than just the victim. Last, the language of the statute indicating that a criminal restraining order may include, "but is not limited" to the three options listed in subsection (b), makes clear that there are many options available to a court in entering a criminal restraining order beyond the three listed.

Consequently, although we will not go as far as to say that a court has unlimited options in making a standing criminal restraining order pursuant to § 53a-40e, we conclude that the situation presented here, where those protected by the order are the minor children of the victim and the defendant, is clearly a situation within the scope of the statute. Children living in the home of a victim of sexual assault and attempted murder should be afforded the same protection of a standing criminal restraining order as their victim mother. For all of those reasons, we conclude that the court's standing criminal restraining order precluding the defendant from contacting his minor children is within the scope of § 53a-40e.

The judgment is affirmed.

In this opinion the other judges concurred.